708 So.2d 731 (1998)
Tommy Lee EVANS
v.
Donna Coody LUNGRIN.
Nos. 97-C-0541, 97-C-0577.
Supreme Court of Louisiana.
February 6, 1998.
*733 E. Grey Burnes Talley, Alexandria, for Applicant in No. 97-C-0541 and Respondent in No. 97-C-0577.
Charles K. Anderson, De Ridder, for Respondent in No. 97-C-0541 and Applicant in No. 97-C-0577.
JOHNSON, Justice.[*]
We granted certiorari in this child custody case to determine whether the trial court erred in awarding joint custody with four-month, alternating, split physical custody to a mother who relocated to the state of Washington and a Louisiana father. The court of appeal amended the trial court judgment to designate the child's mother as the domiciliary parent, and affirmed the trial court judgment as amended.

FACTS AND PROCEDURAL HISTORY
Relator, Donna Coody, gave birth to her daughter, Lindsay Jean Coody on April 27, 1994. On December 26, 1994, Donna Coody married Bobby Lungrin. Donna Coody Lungrin and Bobby Lungrin subsequently moved to Alabama with Lindsay. On June 30, 1994, another man, Tommy Lee Evans, filed a formal acknowledgment of paternity, claiming that he is Lindsay's biological father. In response, Mrs. Lungrin filed a motion to order fertility testing, alleging that Mr. Evans had previously represented that he was sterile, and therefore, unable to father a child. Mrs. Lungrin and Mr. Evans were never married to each other. The parties consented to blood testing to determine Lindsay's biological father. The trial court issued a court order requiring the paternity test. The parties also stipulated that Mr. Evans could visit with Lindsay for two hours every other Saturday pending the test results.
As a result of the court-ordered paternity testing, it was discovered that Mr. Evans is in fact Lindsay's biological father. Since then, Mr. Evans has been attempting to establish a relationship with the child. He has paid child support and has sought regular visitation with Lindsay. On April 11, 1995 Mrs. Lungrin and Mr. Evans stipulated to joint custody, with Mrs. Lungrin as the domiciliary parent. The parties also stipulated that Mr. Evans would exercise visitation with Lindsay one week per month for nine months and alternating weeks in June, July, and August. The stipulation further provided that Mr. Evans was to pay $150.00 per month in child support and that each party would give the other sixty days' prior notice of any change in residence.
Mr. Lungrin, who is a Sergeant in the U.S. Army, was transferred to the state of Washington. Based on Mrs. Lungrin's impending move to Washington, Mr. Evans, who lives in Dubach, Louisiana, filed a rule on August 31, 1995 seeking sole custody of Lindsay. Mr. Evans also alleged that Mrs. Lungrin refused to comply with the visitation schedule, interfered with his court-ordered telephone contact with the child and was unwilling to facilitate, encourage and foster his relationship with the child. In her response to the rule, Mrs. Lungrin denied Mr. Evans' allegations and asked the court to maintain the original joint custody agreement.
During the trial of the matter, which was held on December 4, 1995, Mr. Evans testified that he is able to care for Lindsay on a full-time basis because he is unable to work due to a back injury. There is no evidence or allegations that Mr. Evans' disability interferes with his care of Lindsay. Mr. Evans testified that when Lindsay is with him, he feeds her, bathes her, and puts her to sleep himself. His testimony was corroborated with the testimony of several neighbors, who testified that Mr. Evans always has the child with him and never leaves her with babysitters. Mr. Evans asked the court to award him equal sharing of the physical custody of Lindsay.
Several of Mr. Evans' neighbors also testified that Mr. Evans' home is clean and wellkept. Mr. Evans lives in a mobile home with his mother, who is of ill health. His mother's ill health however, does not prevent her from assisting with Lindsay's care. Mr. Evans' sister, Patricia Johnson, testified that she visits Mr. Evans at least twice a month. She testified that based on her observation, Lindsay *734 is happy when she is with her father, recognizes him and calls him "Daddy", and often plays with other neighborhood children. Several neighbors confirmed that Lindsay has many playmates in the area, and that they have observed Mr. Evans and Lindsay engage in activities such as going to the zoo and riding bicycles.
In Washington, Mrs. Lungrin and her husband live in a two bedroom home with Lindsay and have visitation with Mr. Lungrin's seven-year-old son from a previous marriage. Mrs. Lungrin is also capable of caring for Lindsay on a full-time basis because she does not work outside the home. At the trial, Mrs. Lungrin's relatives and friends testified as to her superior parenting skills and described her as an "immaculate housekeeper". At the trial, Mrs. Lungrin acknowledged the fact that the stipulated visitation schedule was unworkable due to her move to the state of Washington. She was also concerned about extended visitations for the child. Mrs. Lungrin testified that after the seven-day visits with Mr. Evans pursuant to the visitation plan, Lindsay had temper tantrums and would excessively cling to her. She also testified that after such visits, it was difficult to put Lindsay to sleep for about two days. Mrs. Lungrin further testified that in eight of ten visitations with Mr. Evans, Lindsay has not willingly gone with him. Mrs. Lungrin's aunt and a psychotherapist corroborated Mrs. Lungrin's testimony about Lindsay's aberrant behavior after visits with Mr. Evans.
At the trial, Mrs. Lungrin presented the testimony of Nancy DeVaney, a licensed custody evaluator in Alabama, by way of deposition. Ms. DeVaney was unable to appear at the trial of this matter due to a previously scheduled court appearance on the same date. Mr. Evans did not object to the admission of the deposition into evidence, but noted for the record that Ms. DeVaney had neither seen him, nor had any contact with him whatsoever. Ms. DeVaney holds a Doctorate degree in Clinical Social Work. She is licensed in Alabama and Florida and is registered with the Professional Academy of Custody Evaluators. She has engaged in the practice of psychotherapy for the past twenty (20) years and has been performing custody evaluations for the past ten (10) years. She has previously testified in court after being qualified as an expert in custody matters.
Ms. DeVaney testified that when a child's parents do not live within a distance which allows for frequent contact with the child, a three-month, alternating split between parents is unacceptable for a child Lindsay's age. Ms. DeVaney based her opinion on four visits with Mrs. Lungrin and Lindsay, and on literature and professional journals. Mrs. Lungrin proposed that Lindsay have four, twelve-day visits a year with Mr. Evans, with Mrs. Lungrin keeping the child every fourth night. During this time, Mrs. Lungrin would remain in Louisiana, presumably at her mother's home in De Ridder, Louisiana. The length of these visits would be extended each year until Lindsay reaches kindergarten age, at which time Mr. Evans could have full summer visitation.
After trial and after taking the matter under advisement, the trial court found that equal sharing of physical custody was in Lindsay's best interest during her preschool years. Accordingly, the trial court ordered equal custody periods in blocks of four months, with Mr. Evans' visitation to commence in April, 1996. The trial court also ordered that joint custody be continued, but that neither parent be designated as the domiciliary parent. Finally, the trial court ordered visitation in favor of Lindsay's maternal grandparents one weekend each month that the child is with her father.
Mrs. Lungrin appealed, alleging that the trial court's findings had been interdicted by legal error. Mrs. Lungrin maintained that the trial court's ruling refers to former La. C.C. art. 131, which had been repealed effective January 1, 1994. Mr. Evans' initial rule for visitation was filed after this date. The court of appeal found that although the trial court cited repealed civil code provisions, the trial court nevertheless applied the revised articles. The court of appeal also found that the trial court properly awarded joint custody in that neither party proved by clear and convincing evidence that sole custody was in the best interest of the child. The court of appeal however, further found that maintaining *735 Mrs. Lungrin as the domiciliary parent will add needed stability and continuity in Lindsay's life. The court of appeal noted that Mrs. Lungrin and Mr. Evans have already developed disagreements as to Lindsay's medical needs. The court of appeal further noted that Mrs. Lungrin has provided the majority of Lindsay's care in the past, and is the more experienced of the two parents, having already raised another child. Accordingly, the court of appeal affirmed the trial court, but amended the custody award to reinstate Mrs. Lungrin as the domiciliary parent.
Mrs. Lungrin filed a writ application with this court, alleging the following assignments of error:
1. The court of appeal erred in affirming the trial court's award of four-month, alternating split custody to a Washington mother and a Louisiana father;
2. The court of appeal erred in finding that the trial court judgment was not interdicted by legal error;
3. The court of appeal erred in affirming the trial court's disturbance of the consent decree of joint custody because Mr. Evans failed to meet the burden of proof for change of custody in that he failed to demonstrate that the [proposed] plan would be in the best interest of the child; and
4. The court of appeal erred in affirming the trial court irrespective of its failure to use the "best interest of the child" standard.
In a companion writ application (97-C0577), Mr. Evans alleges that the trial court erred in granting visitation to the mother during the father's custody period, while failing to grant reciprocal visitation to the father during the mother's custody period. Mr. Evans urges that pursuant to La. R.S. 9:335, a domiciliary parent is the parent with whom the child primarily resides. Mr. Evans argues that in the equal custody arrangement, the trial court awarded custody of the child equally between the parents and that therefore, it is improper to designate a domiciliary parent when there is no parent with whom the child primarily resides.

DISCUSSION
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742, 747, rev'd in part, on other grounds, 96-3028 (La.7/1/97); 696 So.2d 569, reh'g denied, 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. See Lasha, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Lasha, 625 So.2d at 1006.
The prior Article 131 established a rebuttable presumption in favor of joint custody and the jurisprudence placed the burden of proof that joint custody would not be in the child's best interest on the party seeking sole custody. Kenneth Rigby, 1993 Custody and Child Support Legislation, 55 La. L.Rev. 103, 109 (1994). The inquiry was directed toward the quality of the relationship existing between the parents with respect to the rearing of the child. The best interest of the child was the controlling criterion in custody and visitation awards in prior Article 131, and there was a rebuttable presumption that joint custody was in the best interest of the child. See Rigby, supra note 14, at 105.
The prior Article 131 was revised by Act 261 of 1993, which became effective on January 1, 1994. With the revisions, the rebuttable *736 presumption in favor of joint custody contained in the prior law is omitted. In its place is the "best interest of the child" test with a mandatory descending order of types of custodial arrangements that may be ordered by the court. Rigby, supra notes 32 and 33, at 108. The present Article 131 provides the following:
"In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La. C.C. art. 131.

The new legislation mandates that if the parents agree as to who will have custody, the court "shall award custody" in accordance with the parents' agreement unless the best interest of the child requires a different award. La. C.C. art. 132. See also, Rigby, supra note 34, at 108. If the parents do not agree as to who is to have custody, or if their agreement is found not to be in the best interest of the child, the court "shall award custody to the parents jointly." La. C.C. art. 132. No longer is joint custody simply presumed to be in the best interest of the child; it is mandated absent an appropriate parental agreement for another custodial arrangement.[2] Rigby, supra note 37, at 109. The revisions also contain changes in the burden of proof in custody determinations. Pursuant to the revised La. C.C. art. 132, a substantially higher burden is now placed on the parent seeking sole custodythat of "clear and convincing evidence."[3]
In the instant case, plaintiff, Tommy Lee Evans, filed his rule for modification of custody on August 31, 1995. Because plaintiff's rule was filed after January 1, 1994, the amended Article 131 was applicable to the facts of this case. However, the trial court made reference to La. C.C. art. 131 as it read prior to the amendment. The prior Article 131, subsection D provided in pertinent part:
"D. For purposes of this Article, `joint custody' shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. To the extent it is feasible, physical custody of the children shall be shared equally. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2)...." Act 905(D), § 1.

In its Reasons for Judgment, the trial court states:
"The legislative intent is clear from the provisions of LSA-R. S. Article 131(C). Joint custody with equal time for each parent is presumed to be in the best interest of the child. Article 131(D) specifically provides that where ever practical the parties shall share physical custody." [Emphasis added].

This court finds that the trial court's application of the express mandate of the prior Article 131 that to the extent feasible, physical custody of the children shall be shared equally, and the trial court's determination that "joint custody with equal time for each parent is presumed to be in the best interest of the child," is legal error. The trial court's conclusion that joint custody with equal physical custody is in Lindsay's best interest is based on its reliance on the prior legal presumption in favor of joint custody and equal time. As a result of the trial court's reliance on the former Article 131 and its application of incorrect principles, legal error interdicted the fact-finding process. Moreover, we find that this legal error is a prejudicial error of law in that it skewed the trial court's finding of a material issue of factthat joint custody with equal time is in the best interest of the child. Accordingly, this court will make an independent de novo review of the record and address whether the trial court erred in awarding equal, split physical custody. See Lasha, 625 So.2d at 1006.
The former provision of Article 131(D), which stated in part that to the extent feasible, physical custody of the children shall be shared equally, is now found in La. R.S. 9:335(A)(2)(b). This statute, which was *737 effective at the time the trial court rendered its judgment, provides in part:
"To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally."
The court of appeal mentioned this statute to point out the fact that the trial court did consider the best interest of the child. However, La. R.S. 9:335(A)(1) is not a consideration in making the determination of whether or not to award joint legal custody. La. R.S. 9:335(A), in its entirety, provides:
§ 335 Joint custody decree and implementation order
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
It is evident that this statute becomes operable once there has been a determination that joint legal custody is in fact in the best interest of the child. See La. R.S. 9:335(A)(1). As earlier indicated, the trial court's decision to continue joint custody is based on its consideration of the presumption in favor of joint custody with equal time embodied in the prior Article 131. Hence, although the wording of prior Article 131 and La. R.S. 9:335(A)(2)(b) are essentially the same, reliance on the statute to validate the trial court's findings is improper because the statute is inapplicable until after the court has found that joint custody is in the best interest of the child. See La. R.S. 9:335(A)(1). See also, La. C.C. art. 131.
The term "custody" is usually broken down into two components: physical or "actual" custody and legal custody. The typical joint custody plan will allocate time periods for physical custody between parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents. George D. Ernest, III, Joint Custody and Parents' Liability Under Civil Code Article 2318, 44 La. L.Rev. 1791 (1984). Legal custody, by contrast, has previously been defined as "the right or authority of a parent or parents, to make decisions concerning the child's upbringing." See Ernest, supra note 5, at 1792. Pursuant to this definition, both parents remained legal custodians of the child regardless of which parent had physical custody of the child at a given time under the typical joint custody plan. Joint legal custody thus involved a sharing of the responsibilities concerning the child including decisions about education, medical care, discipline and other matters relating to the upbringing of the child. Ernest, supra at 1792.
With the enactment of Act 261 however, the decision-making rules have changed. Presently, when parties are awarded joint custody, the court must designate a domiciliary parent unless the implementation order provides otherwise, or for other good cause shown. La. R.S. 9:335(B)(1) provides:
"In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown."
The domiciliary parent has the authority to make all decisions affecting the child unless an implementation order otherwise provides.[4]La. R.S. 9:335(B)(3). See also, Rigby, supra note 60, at 112. All major decisions made by the domiciliary parent concerning the child are subject to judicial review upon motion by the non-domiciliary parent. In this judicial review, it is presumed all major decisions made by the domiciliary parent are in the *738 best interest of the child. La. R.S. 9:335(B)(3). See also, Rigby, supra notes 61 and 62, at 112, 113. Therefore, the burden of proving they are in fact not in the best interest of the child is placed on the nondomiciliary parent who opposes the decision. Non-major decisions are not subject to judicial review. Rigby, supra at 113. The domiciliary parent is also the parent with whom the child primarily resides. La. R.S. 9:335(B)(2) states:
"The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents."
Notwithstanding the domiciliary parent's right to make all decisions affecting the child however, Act 261 nevertheless obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority. See La. R.S. 9:336. Moreover, in instances where the requirements for not designating a domiciliary parent are met, Title VII of Book I of the Civil Code governs the rights and responsibilities of parents with joint legal custody. La. R.S. 9:335(C) states the following:
"If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code."
Mrs. Lungrin argues that Mr. Evans failed to satisfy his burden of proof for the modification of a consent judgment of custody. As earlier stated, the paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131. However, in actions to change custody decisions rendered in considered decrees, an additional jurisprudential requirement is imposed. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95); 653 So.2d 48, writ denied, 95-1488 (La.9/22/95); 660 So.2d 478. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Hensgens, 653 So.2d at 52. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child." Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986), reh'g denied (Sept. 11, 1986).
However, in cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in Bergeron is inapplicable. Hensgens, 653 So.2d at 52. Instead, where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Hensgens, 653 So.2d at 52. In the instant case, the original custody decree is a stipulated judgment because it was made by consent of the parties and no evidence of parental fitness was taken. Therefore, the "material change of circumstances" burden of proof applies.
We find that Mr. Evans has satisfied his burden of proving that there has been a material change of circumstances. Mrs. Lungin's relocating Lindsay to the state of Washington is a material change in circumstances since the original custody decree. Mrs. Lungrin has conceded that the move to Washington makes the original custody decree unworkable. As a result of the move to Washington, Lindsay will have less contact with Mr. Evans, as well as with other maternal and paternal family members.
Mr. Evans seeks sole legal custody in his proposed modification to the original custody decree. He alleges that Mrs. Lungrin has failed to comply with the stipulations of the agreement between the parties, *739 and that Mrs. Lungrin is unwilling to facilitate, encourage and foster his relationship with Lindsay. The evidence reveals that both parents have expressed and demonstrated a sincere desire to be an active part of the child's life. Both parents are able to care for the child and have a genuine concern for the child's needs, well-being and upbringing. As the trial court indicated in its Reasons for Judgment, although Mrs. Lungrin was initially reluctant to foster a relationship between Mr. Evans and Lindsay, it appears that she has come to understand the father's rights to the child and her obligations in connection with those rights. Additionally, with the enactment of Act 261, changes in the decision-making rules make parental cooperation less critical to a successful joint custody award.[5] Rigby, supra at 113.
Furthermore, as with the prior Article 131, distance between the respective residences of the parties is a factor to be considered in determining the child's best interest in custody disputes. However, with the new decision-making rules and the ability of parents to communicate instantly when necessary by telephone or other means, the distance separating the parents assumes less importance in determining whether sole legal custody is a better custody arrangement than joint legal custody. Removal of a parent from Louisiana should not, of itself, constitute a sufficient reason to terminate the joint legal custody arrangement. See Rigby, supra notes 71-75, at 114-115. Under these circumstances, we find that Mr. Evans has failed to meet his burden of proving by "clear and convincing evidence" that sole custody is in the best interest of the child. Thus, we find that the lower courts correctly awarded joint legal custody.
Absent the showing of good cause, the court must render a joint custody implementation order when joint custody is decreed. La. R.S. 9:335(A)(1). The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents. La. R.S. 9:335(A)(2)(a). We remand the case to the trial court for the rendering of a joint custody implementation order to fulfill these statutory requirements.
We find that the trial court's award of four-month, alternating, split physical custody to plaintiff and defendant is not in the best interest of the child. The evidence reveals that such an arrangement between a parent who lives in the state of Washington and a Louisiana parent deprives a child of Lindsay's age of a sense of stability. In providing her expert opinion about a hypothetical proposal involving three-month, alternating split physical custody, Nancy DeVaney, expert psychotherapist and custody evaluator, testified by deposition that such an arrangement between the parties involving a child Lindsay's age and with the great distance between the parents is unacceptable, and could potentially be deleterious to the child. Ms. DeVaney specializes in family assessments and the appropriateness of visitation arrangements in terms of the best in interest of the child standard. She testified that a child Lindsay's age is in dire need of predictability, routine and consistency. She further testified that she had observed irritability and self-abusive behavior by Lindsay, and that such behavior was most likely the result of being separated from her primary caretaker for a prolonged period of time. Ms. DeVaney noted that she is aware of alternating split custody arrangements in some rare cases in which the parties live close to each other such that there can be an exchange of time during that period. She stated that for a child Lindsay's age, four days should be the maximum period, without some kind of face-to-face contact with the primary caretaker. Hence, we find that an equal, alternating, split physical custody arrangement is not in the best interest of the child under the facts of this case. Furthermore, while she had the opportunity to evaluate *740 Lindsay and Mrs. Lungrin, and their interaction with each other, Ms. DeVaney neither evaluated Mr. Evans, nor observed Lindsay's interaction with him. Because Ms. DeVaney's conclusions and testimony are based solely on observations and evaluations of Mrs. Lungrin and Lindsay, we reverse the court of appeal's designation of Mrs. Lungrin as the domiciliary parent. Accordingly, we remand the case to the trial court for the appointment of, and an evaluation by an independent expert, and for a determination by the trial court of which, if any, parent should be designated the domiciliary parent.
The legislative intent in amending Article 131 was to shift the focus of the inquiry in joint custody arrangements from the quality of the relationship between the parents and their willingness to encourage a close and continuing relationship between the child and the other parent, to the welfare of the child as the ultimate consideration. See Rigby, supra notes 46-48, at 110. With the revisions to Article 131, the legislature has made it clear that the primary consideration and the prevailing inquiry is whether the custody arrangement is in the best interest of the child. Based on our de novo review of the record, as supported by the testimony of Ms. DeVaney, the expert custody evaluator and psychotherapist, transporting Lindsay back and forth between the state of Washington and Louisiana for four-month intervals is not in her best interest. Any additional assignments of error and arguments raised by the parties are pretermitted.

DECREE
For the foregoing reasons, we affirm the court of appeal's decision insofar as it affirms the trial court's award of joint legal custody. We reverse the court of appeal's decision insofar as it amends the trial court's judgment to designate Donna Coody Lungrin as the domiciliary parent. We further reverse the trial court's judgment, as amended and affirmed by the court of appeal, insofar as it awards equal, alternating split physical custody to Donna Coody Lungrin and Tommy Lee Evans. We remand the case to the trial court for the rendering of a joint custody implementation order, the appointment of, and evaluation by, an independent expert, and the designation of a domiciliary parent, if appropriate, all consistent with the reasoning expressed herein.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
VICTORY, J., concurs.
NOTES
[*] Pursuant to Rule IV, Part 2, Section 3, Chief Justice Calogero was not on panel.
[2] La. C.C. art. 132 provides in pertinent part:

"In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to parents jointly...."
[3] La. C.C. art. 132 provides in pertinent part:

"... if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent."
[4] La. R.S. 9:335(B)(3) (Supp.1994) provides:

"The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise."
[5] One of the deficiencies of prior Article 131 was that it contained no rules for decision-making by the parents awarded joint custody. Absent a specification for decision-making authority in the plan for implementation of the custody order allocating the legal authority, privileges, and responsibilities of the parents, the only statutory obligation imposed upon the parties was to confer with each other about these matters. If parents disagreed after conferring, no mechanism was provided to resolve the dispute. Rigby, supra at 111-112.