DOWNING, J.
| ¡.This is an appeal on behalf of K.S., a minor child in need of care. The judgment appealed “continued” the child’s legal custody with the Louisiana Department of Public Safety and Corrections (DPSC),[1] relieved the Office of Community Services (OCS) of legal custody and of any obligation to provide supervision for K.S., and ruled that OCS “[had] completed all possible services to [K.S.’s] family. For the following reasons, we reverse the judgment of the juvenile court. We enter orders accordingly.
PROCEDURAL HISTORY
K.S. is a sixteen-year-old child who, in 1999, at the age of eight, was adjudicated a child in need of care. The reason for such adjudication was the inability of KS.’s mother and his legal guardian (his great-grandmother) to supervise him and regulate his medication for a severe behavioral disorder. After the adjudication, despite continued reunification efforts by the OCS, his behavioral problems escalated, resulting in his routinely being removed and transferred to several different foster care group homes. The record reveals that K.S. was transferred to several facilities based on his aggressive, defiant, and disorderly conduct, including frequently running away from the homes in which he was placed.[2] Because of his behavior, he re *37 mained in the continuous custody of the Louisiana Department of Social Services, Rfrom 1999 until through May 18, 2006, and his case purportedly closed on January 4, 2007, for reasons detailed below.[3]
In May 2006, K.S. was residing at Christian Acres, a group home in Tallulah, Louisiana. He ran away from that facility on May 13, 2006 and did not return. On May 18, 2006, he was arrested and charged as an adult with attempted first-degree murder and armed robbery.[4] He was detained at the Madison Parish Correctional Center to await trial.
In November 2006, the OCS recommended that KS.’s case plan be changed. OCS recommended that the case be closed, based on the charges against K.S. and the fact that he was currently incarcerated and awaiting a trial in which he would face the charges as an adult. An objection to the OCS’s recommendation was filed on KS.’s behalf, urging that closing the case would not be in KS.’s best interest, as it would leave him, at the age of fifteen, with no legal custodian. Moreover, K.S. argued that closing the ease was improper and in violation of the Children’s Code, as HS.’s temporary incarceration does not qualify as a permanent placement of a child in need of care as mandated by La. Ch.C. art. 603.
A review hearing[5] was held on November 9, 2006, at which time the trial court heard arguments and took the matter under advisement, continuing the matter to December 14, 2006. On that date, the trial court gave extensive reasons for finding it appropriate to allow the OCS to close its case on K.S. A judgment was signed on January 4, 2007, ordering the 14child’s legal custody to continue with the DPSC and specifically decreeing that OCS be “relieved of any further legal custody or supervision” of K.S. The judgment further provided “that due to [K.S.]’s incarceration, the agency has completed all possible services to this family.”
This appeal on behalf of the minor child followed. K.S. contends the juvenile court committed reversible error in allowing his case to be closed without a permanency plan for him, in violation of La. Ch.C. art. 603. K.S. also asserts the juvenile court abused its discretion by allowingOCS to “ignore the needs of K.S. as his legal guardian” and “abandon K.S., leaving him an orphan with no plan for meeting his needs as a minor.”
*38 BACKGROUND FACTS
The record reveals the following pertinent evidence regarding K.S.’s environment and his special needs that render him a child in need of care. When K.S. was eight years old, he was adjudicated a child in need of care based on his having a severe behavioral disorder and the fact that C.S., his legal guardian and great-grandmother, was unable to regulate his medicine or behavior. The record also contains evidence that KS.’s mother, L.S., was present sporadically in his life, often living with C.S. in her two-bedroom mobile home, together with L.S.’s other minor children, as well as C.S.’s other children, grandchildren, and great-grandchildren. At various times, K.S.’s mother was away with her boyfriend, leaving K.S. and her other children with C.S.[6]
Initially, K.S. was placed in the VOA Parker House in Baton Rouge, and his case plan’s goal was reunification with his family. The OCS worked extensively with C.S. (and L.S., whenever she was available), providing them with in-home psychological studies, in-home parenting education and | ¡^support, monitoring KS.’s medical appointments and the administration of KS.’s medications, as well as providing transportation, and encouraging visitation with K.S. in order to meet the goal of reunification. However, insignificant progress was made, and KS.’s severe behavioral problems, including defiance, aggression, truancy, suspension from school, and running away worsened, causing him to be discharged and transferred to several foster facilities. In 2002, as a result of the insufficient progress made in C.S.’s ability to provide a stable, structured, and supervised environment, as well as the increasing severity of KS.’s aggressive behavior, described as “out of control” and “explosive,” the plan goal was changed from reunification to Alternative Permanent Living Arrangements (APLA).[7] The last facility at which K.S. resided was Christian Acres in Tallulah, Louisiana. He escaped from that facility on May 13, 2006, and subsequently was arrested and charged with the pending charges that gave rise to the OCS proceedings to terminate its supervision of K.S.
DISCUSSION

Subject Matter Jurisdiction

We first review whether the juvenile court[8] was divested of subject matter jurisdiction when K.S. was transferred for prosecution as an adult pursuant to La. Ch.C. art. 305. The appellee here, the State of Louisiana, argues that because of the transfer, K.S. is no longer subject to juvenile court jurisdiction.
| fiWhile there has been no exception raised challenging the juvenile court’s subject matter jurisdiction, we are re *39 quired to consider the issue. It is the duty of a reviewing court to examine subject matter jurisdiction sua sponte. Whittenberg v. Whittenberg, 97-1424, pp. 2-3 (La.App. 1 Cir. 4/8/98), 710 So.2d 1157, 1158. “Whenever there is a serious issue regarding subject matter jurisdiction, a court (including an appellate court) should consider and rule on the issue at anytime, and the issue can even be raised by the court on its own motion.” Lowenburg v. Entergy New Orleans, Inc., 99-2894, p. 1 (La.12/17/99), 751 So.2d 868, 868 (Lemmon, J., concurring opinion).
The record does not reveal how the criminal charges against K.S. were transferred to the court exercising criminal jurisdiction, but it is undisputed that K.S. was transferred on charges of armed robbery and attempted murder. These offenses are transferable for criminal prosecution under La. Ch.C. art. 305 B(4) upon indictment or filing of a bill of information. This paragraph provides as follows:
If an indictment is returned or a bill of information is filed, the child is subject to the exclusive jurisdiction of the appropriate court exercising criminal jurisdiction for all subsequent procedures, including the review of bail applications, and the child shall be transferred forthwith to the appropriate adult facility for detention prior to his trial as an adult. (Emphasis added.)
The State argues that this language precludes the juvenile court from all jurisdiction in this matter, presumably even the jurisdiction to render the judgment at issue on appeal. The jurisdictional language found in La. Ch.C. art. 305, however, does not stand alone. Louisiana Children’s Code article 303 provides in pertinent part:
|7A court exercising juvenile jurisdiction shall have exclusive original jurisdiction over:
(1) Delinquency proceedings pursuant to Title VIII, except when a child either:
(a) Is subject to the jurisdiction of the criminal courts for prosecution and liability as an adult pursuant to Chapter 4 of this Title.
(b) Has been transferred by the juvenile court for criminal prosecution and liability as an adult pursuant to Chapter 11 of Title VIII.
(2) Child in need of care proceedings pursuant to Title VI. * * *
(Footnotes omitted.)
Since a juvenile court has exclusive original jurisdiction over child in need of care proceedings, such jurisdiction cannot transfer to a court exercising criminal jurisdiction. Further, there is no provision in law for the extinguishment of a child in need of care proceeding upon the transfer of jurisdiction over a juvenile’s delinquency charges to the criminal court for prosecution as an adult. Accordingly, we conclude that the “exclusive jurisdiction of the appropriate court exercising criminal jurisdiction” referenced under La. Ch.C. art. 305 extends only to jurisdiction over the criminal matter. Therefore, the juvenile court retained jurisdiction to consider the matter now on appeal.

Legal Custody

K.S. argues that the juvenile court erred in placing him in the custody of the DPSC. We agree. Such action is plainly contrary to law, despite the State’s argument that the juvenile court did not abuse its discretion. La. Ch.C. art. 681 B. provides as follows:
A child in need of care shall not be committed to the Department of Public Safety and Corrections, nor shall such department accept a child in need of care.
| sK.S. has been adjudicated a child in need of care. Therefore, the juvenile court is *40 without authority to place him with the DPSC, and the DPSC is without authority to accept his legal custody. Accordingly, we will reverse the judgment of the juvenile court, including its provision placing legal custody of K.S. with the DPSC.
The State, OCS, and the juvenile court seem to suggest that K.S., an unemanci-pated minor, can live without a legal custodian.[9] Yet they have cited no law, and we know of none, that allows an unemanci-pated minor to be without a legal custodian, even when, maybe especially when, he is charged with and is being held for prosecution on serious criminal charges.

OCS’s Supervision

K.S. also argues that the juvenile court erred in relieving OCS of its supervision of him without a permanent plan for him in accordance with La. Ch.C. art. 603(15).[10] Because we are reversing the judgment of the juvenile court based on legal error,[11] thus retaining custody of K.S. with OCS, we review this issue de novo. When a legal error skews the court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Evans v. Lungrin, 97-0541, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735.
lflHere, OCS has determined that it is not in the K.S.’s best interest for him to be returned to his great-grandmother’s custody. The record reveals no other potential custodian. Therefore, we conclude that it is in K.S.’s best interest to remain in the custody of OCS, pending further legally mandated review.
Further, while OCS argues that it can provide no further services for K.S., we observe that K.S. is presently only charged with a crime. He is presumed innocent, and he may be absolved of the crimes charged. Accordingly, we disagree with OCS that it has completed all possible services to K.S. Accordingly, we conclude that while OCS’s ability to provide services may be severely curtailed while K.S. remains incarcerated, he still needs and is entitled to supervision by OCS. Perhaps services exist that OCS can provide to assist K.S. while he is incarcerated. OCS could perhaps facilitate contact between K.S. and his family and caretakers.
Additionally, we see no prejudice or harm to OCS in requiring it to continue supervision under regular court review as provided by law.
Therefore, in accordance with La. Ch.C. art. 700 A(2), we find that the case plan is not appropriate insofar as it recommends that the case be closed. We order OCS to revise the case plan accordingly.
*41 DECREE
For the foregoing reasons, we reverse the judgment of the juvenile court. Further, we conclude that the case plan developed by OCS is inappropriate in recommending that its case in this matter be closed. We order OCS to revise its case plan to comport with this decision, subject to further review as required by law. Costs of this appeal are assessed to the State of Louisiana, Department of Social Services, Office of Community linServices, in the amount of One Hundred Nineteen and 50/100 Dollars ($119.50).
REVERSED WITH ORDER.

. The judgment actually places K.S. in the custody of the "Department of Corrections,” an incorrect designation. See La. R.S. 36:401 et seq. and particularly, La. R.S. 36:409 F(6).

. The record reveals the following chronology: K.S. was initially placed in a foster home. After one week, on November 17, 1999, he was placed in the VOA Parker House and was soon transferred to Riverside Residential Center. In October 2000, he was transferred to Hope Youth Ranch after Riverside found his behavior to be a danger to himself and others. (The record indicates that five other facilities contacted refused to take K.S. based on his history of delinquent behavior in other facilities.) He spent some time after this at the Boys Sanctuary, and in September 2002, he was transferred to Bethlehem Children’s Treatment Center based on his uncooperative and disruptive behavior. His behavior continued to worsen, and he was moved to Hope Haven Group Home in October 2004. In *37 May 2005, he was placed at Challenge and Development Center, and in December 2005, he was transferred to Christian Acres, where he remained until he ran away and did not return in May 2006. (We also note that the chronology and history of housing for K.S. while in the custody of the OCS as presented in briefs on appeal differs slightly and appears to be more complete than the information provided by the record. We are limited in our review to the contents of the record. However, because the exact chronology of K.S.’s housing throughout the years is not pertinent to the issues raised on appeal, these minor discrepancies are inconsequential.)

. The OCS worked with K.S. and his family toward the goal of reunification from 1999 to 2002, with no changes in the family situation and with K.S.'s behavioral problems escalating. In 2002, the goal for K.S. was changed to the Alternative Permanent Living Arrangement.

. The record reveals that K.S. allegedly shot a 91-year-old woman in the hip and in the head, and that he confessed to the shooting and led police to where he had placed the weapon (gun) used in the offenses.

. The judgment recites that the matters before the court were reviews under LA. Ch.C. art. 692 and 702. La. Ch.C. art. 692 requires case reviews at least once every six months until a child is permanently placed. La. Ch.C. art. 702 requires a permanency review at least once every twelve months until a child is permanently placed.

. The record also reveals that K.S.’s biological father is unknown, as is the location of his stepfather. The whereabouts of his grandmother were not mentioned at all throughout the record.

. The record reveals that although C.S., K.S.’s legal guardian and great-grandmother, attempted to cooperate with the services provided and meet the scheduled visitations with K.S., her participation in the program and ability to provide an environment to meet K.S.’s needs deteriorated over time. The record reveals that K.S.’s mother continued to move from place to place and could not be found. She eventually had another child, born with meningitis, and was back living with C.S. in her two-bedroom trailer together with eight to ten other children, grandchildren and great-grandchildren. In 2004, L.S. was expecting yet another child.

.In the present context, "juvenile court” means the parish court "when exercising juvenile jurisdiction.” See La. Ch.C arts. 418 and 116(4) & (9).

. The State argues in brief that by being transferred to criminal court for prosecution as an adult, K.S. can otherwise be treated as an adult. OCS proposed closing K.S.’s case without proposing legal custody. Among other things, the juvenile court remarked regarding K.S.'s legal custody: "[B]y his being incarcerated ..., all my concerns about who has him and does he have a place to lay his head, those don't exist anymore.... He is not left in limbo. He is in a correctional facility."

. This paragraph provides:
"Permanent placement” means:
(a) Return of the legal custody of a child to his parent(s).
(b) Placement of the child with adoptive parents pursuant to a final decree of adoption.
(c) Placement of the child with a legal guardian.

.A legal error occurs when a court applies incorrect principles of law and such error is prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Evans v. Lungrin, 97-0541, p. 7 (La.2/6/98), 708 So.2d 731, 735.