SAUNDERS, J.,
dissents and assigns reasons.
| ,At the oral argument of this case, Plaintiff argued strenuously that the record contained no evidence of the standard of care required of Dr. Simakajornboon. Defendant suggested that there was evidence to this effect. This moved the court to request that the parties file post-hearing briefs on testimony as to Dr. Simaka-jornboon’s standard of care and how his alleged failure to comply with the standard of care may have caused the damage suffered by Tai Landry. These briefs document clearly that there is no testimony as *719 to the applicable standard of care or a causal relationship between Dr. Simaka-jornboon’s care and the brain damage. My review of the record verifies the absence of any such evidence. The majority opinion, by its silence on the issue, seemingly concedes that no standard of care was established. As such, there is no evidence to justify a finding of fault on the part of Dr. Simakajornboon or to justify a finding that his actions caused the injuries sustained by Tai Landry. These finding were used to apportion zero percent fault to defendant, PSA. This is fundamental legal error.
Ordinarily, trial court findings of fact are reviewed on appeal under manifest error standard. However, as stated in Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735:
| pJWjhere one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is other complete, the appellate court should make its own independent de novo review of the record to determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court’s finding of a material fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. [Citations omitted.]
Where the trial court commits legal error by applying an incorrect legal standard, an appellate court is required to determine the facts de novo from the entire record and render a decision on the merits. Bell v. Ayio, App. 1 Cir.1998, 731 So.2d 893, 1997-0534 (La.App. 1 Cir. 11/13/98).
To determine medical malpractice on the part of a physician, the negligence of the physician must be proved by a preponderance of the evidence. This evidentiary standard cannot be lowered just because the physician is not there to defend himself. The jury must be instructed that the injury alone does not raise a presumption of the physician’s negligence. La.R.S. 9:2794(C). Additionally, there must be proof as to the standard of care exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances. When a physician practices in a particular specialty and where the alleged acts of medical negligence raise issues of the particular medical specialty involved, the standard of care must be that ordinarily practiced by physicians involved with the medical specialty. La.R.S. 9:2794(A)(1). Once a standard of care has been established, then, for a finding of negligence, it must be proven that the standard of care was breached and this breach resulted in the injuries sustained. La.R.S. 9:2794(A)(2 — 3).
To support a finding of fault on the part of Dr. Simakajornboon, evidence is required to prove the standard of care for a specialist in his field, breach of this |,o,standard, and causation as to the injury sustained. The record is devoid of this testimony or evidence. No standard of care as to sleep specialists was established. In the absence of evidence as to the appropriate standard of care, Dr. Simakajorn-boon cannot be cast in judgment or held to be negligent. Again, this very lengthy record before us is devoid of any evidence of the proper standard of care to be used by Dr. Simakajornboon. Again, neither the briefs of defendant nor the majority *720 opinion dispute this fundamental absence of evidence.
I cannot overemphasize the impropriety of finding fault on the part of a physician who is a non-party and as to whom no standard of care has been established. This is high-stakes litigation. There were originally four defendants. The defense spent over two hundred thousand dollars in expert fees. That Dr. Simakajornboon was not made a party suggests strongly that there was no case against him, arguably, because he did not breach the standard of care required of his specialty and no physician could be found, by any party, to testify to the contrary.
It should also not go without notice that Dr. Simakajornboon stands to suffer great personal and professional harm by the rendition of an opinion finding him to have caused damage to this child. While this sort of professional assault may be an unfortunate but necessary consequence of litigation, we should not be insensitive to this by-product of our work and should be diligent in requiring litigants who present a claim against an absent non-defendant to meet the minimum burden of proof required by law. Here, this burden has not been met, and in my view it is a great travesty of justice to fail to correct the error.
My review of the record also suggests that PSA was clearly at fault and the jury committed manifest error in finding otherwise. The record reflects that beginning in Download 3, which itself was after Dr. Simakajornboon’s sleep study, Tai’s | condition worsened. It is legally unsupportable for the jury to have concluded that PSA, while breaching its standard of care for not relaying information that Dr. Simakajornboon did not otherwise have access to or could not have known, did not cause the damage to Tai. It is clear from the record that PSA and Kim Wood were negligent in not reacting to the results of Download 3, where a dramatic increase in hypoxic events occurred. Ms. Wood testified this should have immediately prompted her into action. The “red flag” of Download 3 filling to capacity in six hours would have prompted immediate medical intervention had it been communicated to Tai’s doctors. Instead, the information never reached her treating physicians. It is uncontroverted that, had information PSA controlled been delivered in accordance with PSA’s contractual responsibilities, Tai’s doctors would have drastically altered their recommendations for medical management of her airway. Fault is thus clear and manifest.
The damages are massive. I find all damages should be awarded. I respectfully dissent.