Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,854-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| NICHOLAS WILLIAM HODGKIN | Plaintiff-Appellee |
| versus | |
| WHITNEY L. HODGKIN | Defendant-Appellant |

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 159808

Honorable Robert Lane Pittard, Judge

* * * * *

| | |
|---|---|
| KAMMER & HUCKABAY, LTD. (APLC) By: Charles H. Kammer, III | Counsel for Appellant |
| MARK JOSEPH MICIOTTO | Counsel for Appellee |

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

**STONE, J.**

The appellee, William Hodgkin ("Mr. Hodgkin") filed a petition to establish custody and visitation and objection to relocation. The trial court granted joint, shared custody of the minor child, with Mr. Hodgkin being designated as the domiciliary parent. Whitney L. Hodgkin ("Mrs. Hodgkin") now appeals the judgment of the trial court. For the reasons stated herein, we affirm the trial court's judgment.

## PROCEDURAL HISTORY

On October 15, 2015, the parties were married. Of that marriage one child, C.J., was born on April 1, 2016. The parties separated November 22, 2017, and subsequently divorced on September 16, 2019. Each party reserved the right to address custody and child support before the 26th Judicial District Court at a later time. In February of 2018, the parties entered into an extrajudicial custody agreement (*i.e.*, not a consent decree), which stated that C.J. would live primarily with Mrs. Hodgkin and that Mr. Hodgkin would pay child support in the amount of $470.00 per month. On January 16, 2020, Mr. Hodgkin filed the petition for custody and visitation and objection to relocation. The lower court held a trial on July 2, 2020, and granted Mr. Hodgkin's petition and named him domiciliary parent in a joint shared custody arrangement.[1] Thereupon, Mrs. Hodgkin filed this appeal, and, in effect, assigns the following errors: (1) the trial court should have

---

[1] Mrs. Hodgkin was awarded physical custody in accordance with a joint shared custody implementation plan. Her rights to physical custody under this judgment include every summer beginning the Saturday after the last day of school, until 14 days before school resumes. Mrs. Hodgkin was also awarded the entire Christmas holiday in even number years; the entire Thanksgiving holiday in odd number years; the entire fall and spring break, from the Saturday when school adjourns to the Sunday before school resumes; and weekend visitation, from Friday at 6:00 p.m. to Sunday at 6:00 p.m., whenever Mrs. Hodgkin is in the Shreveport-Bossier area.

designated Mrs. Hodgkin, rather than Mr. Hodgkin, as the domiciliary parent; (2) the trial court should have included in the judgment a provision requiring compliance with La. R.S. 9:355.1.

## FACTUAL BACKGROUND

At all relevant times, Mr. Hodgkin has been employed as an active duty serviceman with the United States Air Force, and has been stationed at Barksdale Air Force Base. Over the course of C.J.'s life, Mr. Hodgkin has been deployed three times. His first deployment was in June of 2016, and he returned in January of 2017. Mr. Hodgkin's second deployment was to Syria in February of 2018, where he stayed approximately four months. From Syria, Mr. Hodgkin went to Jordan, where he stayed another four months, before returning to the United States in October of 2018. Mr. Hodgkin's third deployment was to Qatar in July of 2019. He returned in February of 2020.

During all of Mr. Hodgkin's deployments, Mrs. Hodgkin was C.J.'s primary caretaker. While Mr. Hodgkin was deployed and the parties were separated, Mrs. Hodgkin moved several times; she moved a total of five times between C.J.'s birth and trial. The first move occurred following their separation in November of 2017, when Mrs. Hodgkin moved to Shreveport. Her next move was to Leesville, Louisiana, with her boyfriend at the time. Once that relationship ended, she moved in with her parents, in Pomona, Kansas. After about a month at her parents' home, Mrs. Hodgkin moved into her own apartment in Gardner, Kansas. Mrs. Hodgkin's last relocation occurred in July of 2019, when she moved to Independence, Missouri, with her fiancé and his sons.

Additionally, while Mr. Hodgkin was deployed, Mrs. Hodgkin allowed Mr. Hodgkin's new wife to visit with C.J. on several occasions, invited her to C.J.'s birthday party, and even allowed her to take C.J. to Maine to visit Mr. Hodgkin's family.

The minor child, C.J., has been diagnosed with autism spectrum disorder level two. The initial evaluation took place in July of 2019, with the report being provided in September of 2019. The parties, along with Mr. Hodgkin's new wife and Mrs. Hodgkin's parents, were able to work together to facilitate C.J.'s evaluations, which took place in Shreveport (despite Mr. Hodgkin being deployed at the time and Mrs. Hodgkin no longer living in Louisiana). Prior to Mr. Hodgkin's return in February of 2020, Mrs. Hodgkin allowed Mr. Hodgkin's new wife to pick up C.J. so that he could spend time with his father upon his return from deployment. Mrs. Hodgkin was assured that C.J. would be returned; however, he was not. Instead, as previously mentioned, Mr. Hodgkin filed a petition to establish custody, and, after trial, was designated as the domiciliary parent in a joint shared custody arrangement.

## DISCUSSION

**Standard of review**

Child custody decisions are reviewed under the abuse of discretion standard. *Smith v. Holloway,* 53,352 (La. App. 2 Cir. 1/15/20), 289 So. 3d 647, *citing Leard v. Schenker*, 06-1116 (La. 6/16/06), 931 So. 2d 355. The trial judge's decision in child custody matters is entitled to great weight, and his discretion will not be disturbed on review absent a clear showing of abuse. *Id.; Smith v. Holloway, supra.*

**Assignment of error number one: Best interest of the child**

The best interest of the child is the paramount consideration in determining child custody. La. C.C. art. 131. In that pursuit, La. C.C. art. 134 provides a list of factors which the trial court must consider in determining the best interest of the child:

> A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:
> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
> (2) The love, affection, and other emotional ties between each party and the child.
> (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
> (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
> (6) The permanence, as a family unit, of the existing or proposed custodial home or homes.
> (7) The moral fitness of each party, insofar as it affects the welfare of the child.
> (8) The history of substance abuse, violence, or criminal activity of any party.
> (9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.
> (10) The home, school, and community history of the child.
> (11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
> (12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.
> (13) The distance between the respective residences of the parties.

4

(14) The responsibility for the care and rearing of the child previously exercised by each party.

La. C.C. art. 134.

Mrs. Hodgkin argues that the trial court erred in the following regards:

- factor no. (4): the trial court incorrectly stated that Mrs. Hodgkin has no health insurance; she has health insurance through her work

- factor no. (5): the trial court erred in improperly considering the father's many deployments

- factor no. (6): the trial court erred in not properly considering the father's many deployments, and the effect on the minor child that removing him from the care of his mother and maternal grandparents would have; the trial court failed to take into consideration the lifelong relationship C.J. has with his maternal grandparents and the substantial role they have played in his life; the trial court also failed to consider that Mr. Hodgkin has no family in the Shreveport-Bossier area and that the only home C.J. has known is one where he can see his mother and grandparents

- factor no. (10): the trial court erred in failing to discuss this factor, and in failing to consider the four-month process that the parties went through in obtaining an IEP in Missouri specifically designed to address C.J.'s special needs in school

- factor no. (14): failing to give proper weight to the undisputed fact that Mrs. Hodgkin has been the primary caretaker.

Additionally, Mrs. Hodgkin argues that the trial court improperly took into consideration the fact that she does not have custody of her two

5

daughters from a previous marriage, and only sees them for a few weeks a year.

Mrs. Hodgkin argues that, due to these alleged errors, reversal is warranted under *Merrells v. Dotray*, 53,551 (La. App. 2 Cir. 7/8/20), 299 So. 3d 208. She also suggests that this court is authorized, pursuant to *Merrells*, to conduct *de novo* review. Both of these assertions are wrong. *Merrells* is distinguishable, and in that case, we applied abuse of discretion review, not *de novo* review.[2]

*Merrells* is distinguishable in that it involved a (prejudicial) legal error by the trial court: it applied a superseded version of La. C.C. art. 134, *supra*. This caused the trial court to ignore three critical provisions of the applicable version of La. C.C. art. 134. First, the trial court failed to consider the "potential for the child to be abused," which article La. C.C. art. 134(A)(1) states "shall be the primary consideration."[3] It also failed to consider La. C.C. art. 134(A)(8), "the history of substance abuse, violence, or criminal activity of any party." Because of these legal errors, the trial court in *Merrells* failed to give due effect to the father's conviction for domestic abuse battery of his former girlfriend, and his exposure of the child to

---

[2] The standard for jettisoning deferential review in favor of *de novo* review is set forth in *Evans v. Lungrin,* 97-0541 (La. 2/6/98), 708 So.2d 731. To do so, there must be a prejudicial legal error which interdicted the fact finding process. *Id.* The fact finding process is sufficiently interdicted where the error of law "skews the trial court's finding of a material issue of fact and causes it to pretermit other issues." *Id.* at 735. In *Merrells*, we did not find that standard to be satisfied.

[3] Apparently, in *Merrells*, the trial court was unaware of the May 2018 amendment of La. C.C. art. 134. As amended, La. C.C. art. 134 (A)(1) makes the potential for child abuse the primary consideration in determining the best interest of the child. This article incorporates the definition of child abuse provided in La. Ch.C. art. 603, which includes "[t]he infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person," which "seriously endanger[s] the physical, mental, or emotional health and safety of the child"

6

violence and potential criminal activity. (Nonetheless, we found that the trial court's legal errors did not sufficiently interdict the fact-finding process, as required for *de novo* review under *Evans*, *supra* at n.2).

Furthermore, the trial court's decision in *Merrells* that the father was better suited to provide for the children's material needs (such as food, clothing, medical care), was unsupported by the evidence; in view of the evidence, this factor could only militate in favor of the mother. On those grounds, among others, we reversed the trial court's judgment as an abuse of discretion in *Merrells*.

In this case, Ms. Hodgkin does not make any allegations of legal errors, nor any allegations of potential child abuse, criminal activity, or violence.

In the instant case, after a trial on the merits, the trial court rendered a fair and reasonable judgment that is supported by the evidence. The trial court considered Mr. Hodgkin's prior deployments and recognized that these were not by choice; in that accord, the trial court stated that it would not hold them against Mr. Hodgkin. However, the trial court appropriately imposed a condition on Mr. Hodgkin's custody award to accommodate the parties in view of Mr. Hodgkin's possible future deployments: if Mr. Hodgkin is deployed in the future, Mrs. Hodgkin will be granted physical custody of C.J. for the duration of the deployment. Additionally, the trial court noted that Mr. Hodgkin, except for those times he was deployed, has always lived in Bossier City--while Mrs. Hodgkin has moved a total of five times within Louisiana and out of state. The trial court did mention the fact that Mrs. Hodgkin has two children from a previous marriage who live with their father; however, it does not appear that the trial court gave much, if

7

any, weight to that fact. Finally, the trial court adequately considered C.J.'s relationship with his maternal grandparents, as he commented on their relationship, which was demonstrated via home videos that were submitted into evidence.

The trial court commented that both parties were good parents, but expressed concern regarding Mrs. Hodgkin's numerous relocations. As of trial, Mrs. Hodgkin had moved five times during C.J.'s life. She made two of those moves to further a romantic relationship. Because of these moves, Mrs. Hodgkin has an inconsistent work history. Mr. Hodgkin, on the other hand, has always lived in Bossier City at the Barksdale Air Force Base (with the exception of the times he was deployed), and is in a marriage that appears to be stable. The trial court determined that the best interest of C.J. would be served by Mr. Hodgkin being the domiciliary parent. The evidence in the record adequately supports the trial court's ruling. This assignment of error lacks merit.

**Assignment of error number two: the relocation statutes**

Though she does not designate it as a separate assignment of error, Mrs. Hodgkin also argues that the trial court erred in not requiring that Mr. Hodgkin comply with La. R.S. 9:355.1 as it relates to future relocations.

La. R.S. 9:355.1 provides the definition of both "principal residence of child" and "relocation," whereas La. R.S. 9:355.2 governs the relocation of a child's residence. La. R.S. 9:355.2(C) states, "To the extent that this Subpart conflicts with an existing custody order, this Subpart shall not apply to the terms of that order that govern relocation." The trial court's judgment addresses relocation. It provides that C.J.'s primary residence is Bossier Parish, Louisiana, or wherever Mr. Hodgkin is stationed within the

8

continental United States.  Because the judgment of the trial court addresses relocation, the provisions of La. R.S. 9:355.1 are not applicable to the instant case.  Mrs. Hodgkin's argument that the trial court erred in not ordering compliance with La. R.S.  9:355.1 is without merit.

## CONCLUSION

For the reasons set forth, the judgment of the trial court is

**AFFIRMED.**

All costs of this appeal are assessed to Mrs. Hodgkin.