NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-496

JOSIE E. SABBIDES

VERSUS

MARK S. SABBIDES

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 220,708
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and John E. Conery, Judges.

AFFIRMED.

**Angelo Joseph Piazza, III**
**Attorney at Law**
**Post Office Box 429**
**Marksville, Lousiana 71351**
**(318) 253-6423**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Josie E. Sabbides**

**Lauren Gay Coleman**
**Attorney at Law**
**910  Foisy Avenue**
**Alexandria, Louisiana 71301**
**(318) 449-9857**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Mark S. Sabbides**

**CONERY, Judge.**

In this child custody case, the mother, Josie Elliott Sabbides (Josie) appeals the trial court's judgment granting joint and shared 50/50 custody of her minor children and designating the father of the three minor children, Mark Steven Sabbides (Mark), as the domiciliary parent. The trial court divided the physical custody of the minor children between the parents on an alternating week to week basis. Josie urges that the trial court erred in awarding 50/50 physical custody of the minor children, and designating Mark as domiciliary parent. In so doing, she claims the trial court failed to consider or admit into evidence documents demonstrating Mark's lack of credibility and moral fitness. Finding no abuse of discretion, we affirm.

## FACTS AND PROCEDURAL HISTORY

The underlying facts of this case are undisputed and evidence a long history of acrimony and turmoil in the martial relationship. Josie and Mark were married on January 26, 2003, and are the parents of three minor children, a son born October 20, 2004, a daughter, born June 5, 2007 and an infant daughter, born May 9, 2011.

Josie filed her first petition for divorce on May 2, 2005. The parties reconciled, and the hearing was continued at the request of Josie. In 2008, Josie filed a petition for protection from abuse that was also dismissed at her request.

On August 1, 2008, Mark filed his first petition for divorce and other relief. The hearing on the petition was continued several times, and ultimately an agreement was reached between the parties. The trial court signed a consent judgment on March 20, 2009, which provided, in pertinent part, for shared joint custody of the three minor children. Mark was given every other weekend

visitation and a "dinner night" during the week. Josie was named as the primary domiciliary parent.

On June 29, 2009, Josie filed a rule for past due child support. This resulted in an order requiring Mark to pay $500 in arrearages.

On January 6, 2010, Josie filed her second petition for protection from abuse. Josie, failed to appear at the hearing, and the petition was dismissed. The parties then reconciled, and Josie became pregnant.

On February 23, 2011, Josie filed her second petition for divorce. The couple's infant daughter was born May 9, 2011. On June 27, 2011 an order was signed by the trial court appointing a psychologist to conduct mental health evaluations of the parties and the two older minor children. The trial court then entered three interim consent custody agreements beginning on August 12, 2011.

In the August 12, 2011 agreement, Josie was designated domiciliary parent. Mark was granted alternate weekend visitation from Thursday to Monday with the older minor children and a Thursday supper visitation every other week during the school year. The interim consent decree also granted Mark special visits with his infant daughter and custody of the two older minor children for the summer vacation, beginning the day school recessed and ending one week prior to the start of the school year. During the summer, Josie was ordered to follow the visitation schedule set up for Mark during the school year.

On November 18, 2011, the interim custody agreement was modified after a pre-trial conference held on November 14, 2011. This second interim custody agreement ordered that the physical custody of the two older minor children be shared equally, in an alternating weekly arrangement. Mark was given overnight visitation with his infant daughter during his custody week on Wednesday night

and on Friday until Sunday during his weekend with the older minor children. Josie remained the domiciliary parent.

A third interim consent custody agreement was entered on January 10, 2012, and did not change the status of the custody of the minor children. At the time of the custody hearing on December 17, 2012, the parties were voluntarily sharing custody of all three minor children on a week-to-week basis, including the infant, but the record does not reflect a written agreement or judgment of the trial court to that effect. Josie remained the domiciliary parent.

On March 13, 2012, Mark filed a rule for final divorce, and a judgment of divorce was granted on March 26, 2012. On November 15, 2012, Mark filed a motion to reset custody rule requesting he be named domiciliary parent of the minor children.

The trial court conducted a full trial on the merits on December 17, 2012, after which the trial court took the matter under advisement. On January 9, 2013, the trial court issued extensive written reasons for judgment which were incorporated into a February 5, 2013 judgment. The judgment decreed joint and shared custody of the three minor children to Josie and Mark on a week-to-week basis and designated Mark as the domiciliary parent. The judgment also included very specific instructions to both parents, concerning the exchange of the minor children and ordered each parent to foster and encourage a loving relationship between the minor children and their other parent. Josie timely appealed the February 5, 2013 judgment.

### *ASSIGNMENTS OF ERROR*

1) The trial court erred as a matter of law and fact by denying proffered evidence relating to respondents past employment termination as it relates to credibility and moral fitness.

3

2) The trial court erred as a matter of law and fact by granting shared custody and by designating the father as primary custodial parent.

## LAW AND ANALYSIS

### *Standard of Review*

In the absence of "manifest error" or unless it is "clearly wrong," an appellate court may not set aside a trial court's findings of fact. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In a child custody dispute, the appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Steinebach v. Steinebach*, 07-38, p.4 (La.App. 3 Cir. 5/2/07), 957 So.2d 291, 294 (citations omitted). "Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child." *Id.* at 294. *See also Evans v. Lungrin,* 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

In addition, the supreme court in *Housley v. Cerise,* 579 So.2d 973, 976 (La.1991) (quoting *Sistler v. Liberty Mutual Insurance Co.,* 558 So.2d 1106 (La.1990)), specifically clarified the role of the appellate court by stating, "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." This court in *McCorvey v. McCorvey,* 05-174, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 357, 362, *writ denied,* 05-2577 (La. 5/5/06), 927 So.2d 300, further stated, "The basis for this principle of review is grounded not only upon the better

4

capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts."

In making a determination of the custody of minor children, the trial court must consider La.R.S. 9:335 which provides in pertinent part:

> A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
>
> (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
> (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
>
> (3) The implementation order shall allocate the legal authority and responsibility of the parents.
>
> B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
>
> (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
>
> (3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

As provided in La.Civ.Code art. 134, the trial court is to consider the twelve factors listed therein when determining the best interests of the child.

### Assignment of Error One:

Josie urges that the trial court erred in failing to admit into evidence Mark's past employment records, as they bear on his credibility and moral fitness. The

5

records at issue were from Cabrini Hospital in 2007, and although the trial court did not allow the documents to be admitted into the record, they were proffered and counsel was allowed to question Mark about his termination from several jobs, including the job at Cabrini. The trial court carefully considered the allegations made by Josie concerning Mark's moral character and credibility and found them to be unsupported. Thus, this assignment of error has no merit.

*Assignment of Error Two:*

Josie also urges that the trial court erred in continuing the week-to-week custody arrangement which was in place at the time of trial, and especially erred in designating Mark as the domiciliary parent.

The testimony presented at the hearing was extensive, and the trial court was very familiar with the case due to prior proceedings. The trial court in its written reasons was very clear that the numerous attorneys who had enrolled and had ultimately withdrawn from representation of Josie, as well as the trial court, had expended a great deal of effort to try and resolve the issues of custody between the parties.

The trial court explicitly found:

Since February 2011, the parties and their attorneys have attended at least three pre-trial conferences with the court; a custody evaluation has been done by Dr. Daniel Lonowski, and Josie has unsuccessfully attempted to file at least [two] temporary restraining orders against Mark to prevent him from exercising his visitation. This matter is ripe for a considered decree so the parties can accept their situations and move forward with raising their three children.

The trial court in its written reasons specifically cited two portions of La.Civ. Code art. 134, factor (6) and factor (10), which support its decision on both custody and the naming of a domiciliary parent. These two factors form the foundation for the trial courts' ruling. The ruling by the trial court in both sections

6

is stated in its entirety below. The trial courts' reasons under factor (6) include an extensive discussion of the allegations made by Josie against Mark during the long history of this matter. The findings under factor (10) address the circumstances and decision by the trial court in granting domiciliary parent status to Mark.

### (6) The moral fitness of each party, insofar as it affects the welfare of the child.

As noted above, there have been several allegations by Josie that Mark was molesting their daughter, [J] (DOB 6/5/07). Josie testified that she initially reported this complaint to [J's] therapist, Dr. Guilbert and pediatrician, Dr. Rhodes. In spite of the fact that both doctors are mandatory reporters to office of Child Services, neither doctor felt the information merited a report. After a second attempt to report to these doctors, Josie then brought [J] to the emergency room, wherein a call was made to the Rapides Sheriff's department. After [a] courtesy CASA interview was performed, the children were released to the father. The allegation was never validated.

A second allegation came after Mark filed his request to set this matter for hearing. Currently, there is no finding from OCS. At trial, Josie requested that the record remain open for submission of counseling records of Jennifer Riche, La. Behavioral Health Partnership. Ms. Riche has been counseling [J] since August 12, 2012. This request was granted and the records have been submitted to and reviewed by the court. The therapy in question was initiated by Josie. Mark has not participated therein.

Ms. Riche's records indicate that [J] did inform her that her father "check's" her "behind and tutu", but that he "does not hurt her and "only looks with his eyes". [sic] Based on this information, Ms. Riche's record indicates that a complaint was made to OCS. After the complaint, Ms. Riche's notes indicate that [J] reported that a "man came to talk to her daddy" and that he "has not checked her at all". [sic] She further reported that she was "staying with her dad that week and that they were going fishing." Ms. Riche reports that [J] appeared "happy when talking about her dad and did not appear sad or angry." There is no additional evidence in the record with regard to this last complaint. Thus, the court will not consider an OCS investigation that has not been validated.

As noted above, Josie also made a report to Rapides and Grant Parish Sheriffs' offices that Mark was in possession of a prescription medication called Marcaine. As a result of this allegation, Mark was arrested and is currently participating in a pre-trial intervention program. He was required to report this arrest to the Louisiana Board

of Nursing. Mark does not deny that he possessed the medication. However, he testified that Marcaine is a topical anesthetic that was given to him for his hemorrhoids. It was in a sealed (never opened) bottle and was expired by several months. Josie admitted that the medication had been in the refrigerator for some time while she lived in the home and that she had never attempted to discard it. She also confirmed that it was expired and was never opened. She stated the only reason she reported the medication was that she feared Mark would use the [M]arcaine to harm her, the children, or himself. She denied any vindictive motives. Given the history of conflict between the parties, Josie's numerous attempts to thwart Mark's visitation, and the harmless nature of this medicine, this denial of a vindictive motive simply lacks credibility.

Thus, in spite of the various allegations against Mark, neither party lacks the moral fitness to raise the minor children.

### (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

This factor is viewed by the Court as the most significant of the factors, as it directly bears on the ability of children to have a relationship with both their parents. The Court is of the opinion that having a positive and strong relationship with both parents plays an important role in the overall development of children.

In the instant case, this factor is the determinative factor for choosing a domiciliary parent. Because both parents are equally capable of caring for and raising the children, the parent that is most willing to work with the other parent should be granted the domiciliary status. In this case, that parent is Mark.

Josie has been acting as domiciliary parent for the past two years. During this time, she has made numerous attempts to thwart Mark's relationship and visitation with the children. In addition, Josie has unilaterally made several important decisions, without consulting Mark beforehand or informing him thereafter. According to the evidence at trial, Josie: (1) removed [J] [from] his prior school and placed him in Tioga Elementary without giving Mark prior notice of the relocation date; (2) placed [J] on medication for ADD without informing Mark; (3) scheduled surgery for [J] without Mark's input or consent; and (4) left the state with the children on several occasions without prior notice to Mark. These unilateral decision[s] do not show a willingness on Josie's part to parent the children jointly with Mark. Thus, this factor weighs in favor of Mark.

The recent case of *Harvy v. Harvy*, 10-1338 (La.App. 3 Cir. 3/9/11) (unpublished opinion), also awarded domiciliary parent status to the father of a minor child. *Harvy* lends validation to the trial court's decision to name Mark as the domiciliary parent. As stated in the trial court's reasons for judgment, Josie's unwillingness to facilitate a close relationship between the children and their father was a determining factor in the trial court's naming Mark as the domiciliary parent of the minor children.

After considering the testimony and the record in its entirety, we are convinced that the trial court did not abuse its vast discretion in its designation of Mark as the domiciliary parent and granting joint and shared physical custody of the three minor children on a week-to-week basis according to the judgment signed on February 5, 2013, which memorialized the trial court's extensive reasons for judgment rendered on January 9, 2013. It is obvious from the record that the trial court put a great deal of time into this case and thoughtfully considered all options. The decision of the trial court was clearly based on what it believed and found to be in the best interest of the minor children.

The factors contained in La.Civ.Code art. 134 and the requirements of La.R.S. 9:335 were thoroughly and correctly applied by the trial court in its ruling. All remaining factors of La.Civ.Code art. 134 being equal, the trial court's clear findings in factor (6) and factor (10) support the court's decision that shared physical custody on a 50/50 basis and the designation of Mark as the domiciliary parent was in the best interest of the three minor children.

**DISPOSITION**

For the forgoing reasons, we affirm the judgment of the trial court naming Mark Steven Sabbides as the domiciliary parent and granting Mark Steven

Sabbides and Josie Elliott Sabbides joint and shared physical custody of the three minor children on a week-to-week basis according to the judgment and joint custody implementation plan signed on February 5, 2013. All costs of this appeal are assessed against Josie Elliott Sabbides.

**AFFIRMED.**