295 So.2d 224 (1974)
Rodney Joseph TRAHAN, Sr., Plaintiff-Appellant,
v.
ODELL VINSON OIL FIELD CONTRACTORS, INC., Defendant-Appellee.
No. 4558.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
*225 Russell T. Tritico, Lake Charles, for plaintiff-appellant-appellee.
Dubuisson, Brinkhaus, Guglielmo & Dauzat, by James G. Dubuisson, Opelousas, for defendant-appellee-appellant.
Before CULPEPPER, MILLER, and WATSON, JJ.
MILLER, Judge.
Plaintiff Rodney Trahan appeals the jury verdict rejecting his claim for personal injuries against defendant Odell Vinson Oil Field Contractors, Inc. Trahan contended that his injuries were caused by contractor Odell Vinson's negligence in constructing a boardrun to and a turnaround at a drilling site. We affirm on finding the sole legal cause of the accident was the negligence of Trahan's co-employee or co-employees.
Trahan was employed as a truck driver by Carr Truck Rental Service, Inc. Trahan and some fifteen to twenty other truck drivers were sent with their rigs to pick up drilling equipment at Lawtell and move it to a drill site near Palmetto in St. Landry Parish. At Lawtell Trahan assisted with the loading of his 30 foot tandem float and secured the load with chains and binders.
The boardrun at the Palmetto drill site was installed by Odell Vinson in accordance with a contract bid accepted by the drilling company. The bid called for a specific price for a two-ply boardrun of approximately 4,200 linear feet; a specific price for a three-ply boardrun of approximately 1,550 linear feet; a specific price for approximately 125' by 150' of two-ply solid turnaround; and a specific price for installing 6 mil clear plastic under the road and turnaround. Tr. 84.
Trahan was in the process of assisting in unloading his float at the Palmetto site turnaround when Carr Truck Rental's unloading gin pole truck failed to stop before it backed into the side of Trahan's float. Trahan was knocked off the float onto the boardrun and a steel ladder weighing some 1800 pounds fell upon him. Trahan was critically injured and is a paraplegic.
Trahan contends that Odell Vinson was negligent in constructing the turnaround in a low area where it was subject to water overflow; in failing to construct the turnaround with several additional plys; and in constructing an unacceptable turnaround. It was established that there was mud and water over the part of the turnaround where the accident took place.
Trahan contended that the boards used by Odell Vinson were defective and the accident occurred when the boards broke. There was no support for his version of the accident. All other witnesses who saw the boardrun testified that it was in average condition and that they did not find a broken or loose board.
The unloading gin pole truck had two rear drive axles with four wheels on each axle. The driver testified that he applied his brakes and slid into the side of Trahan's *226 float. He knew that the area was muddy and partially covered with water. The driver thought that his truck slipped on a loose board. After Trahan's truck was unloaded the driver continued to unload several trucks. The driver never found a loose board. Odell Vinson was obligated to maintain the boardrun and was not called to make repairs.
Trahan testified in two discovery depositions taken shortly before trial that the unloading gin pole truck backed up pretty fast and slid into his float. He estimated that the truck slid "a good twelve feet" in one deposition and "about 6 to 8 feet" in the other. At trial he explained that he meant inches rather than feet.
If there was a loose board, there is no manifest error in the jury determination that a loose board was not a legal cause of the accident. Neither is there manifest error in the jury determination that mud and water over a portion of the turnaround failed to establish negligence on the part of defendant Odell Vinson. Several witnesses testified that mud and water is found at many drill sites. Similar work is performed under worse conditions.
The jury was manifestly correct in finding that Trahan failed to establish Odell Vinson's negligence, if any, was a legal cause of this accident.
Trahan contends that his right to trial by jury was, in effect, denied because of the manner in which the voir dire examination of prospective jurors was conducted. It is contended that the trial judge erred in allowing defense counsel to probe the prospective jurors' ability to accept and apply Louisiana's law of contributory negligence; that the trial court should not have excused for cause those jurors who testified that they would not apply Louisiana's law of contributory negligence; that the trial judge erred in allowing questions which showed that several jurors would give an award based only on sympathy for Trahan; and that the trial judge erred in excluding some prospective jurors from the courtroom while the voir dire was conducted to panels of six jurors at a time.
The trial judge permitted counsel for Trahan and Odell Vinson to question prospective jurors concerning their understanding of the difference between the burden of proof in criminal cases as against the burden of proof in civil cases. Both counsel questioned prospective jurors concerning their understanding of defendant's burden to prove its allegation of contributory negligence. In the course of these examinations it developed that some prospective jurors would refuse to apply Louisiana's rule barring plaintiff's recovery when his fault together with defendant's fault contributed to and caused the accident. These jurors were excused for cause.
The trial judge also excused for cause those prospective jurors who stated that they would award Trahan something because he had received such extensive permanent injuries. Those jurors stated that it didn't matter what the evidence showed concerning negligence on the part of Odell Vinson, they would award something to Trahan. Both counsel were granted the opportunity to rehabilitate prospective jurors before each juror was excused for cause.
After the regular venire was exhausted special venires were drawn. It appeared to the trial judge that some prospective jurors were determined not to serve and by hearing the voir dire, learned certain responses excused them from serving. At that point the trial judge excluded all prospective jurors except the panel of six called for their voir dire.
The voir dire examination by plaintiff's counsel was as extensive as that by defendant's counsel. After two and a half to three days of voir dire, a jury of twelve and one alternate juror was accepted by both counsel. When the jury was accepted, both counsel had peremptory challenges remaining.
*227 Relevant articles (or portions thereof) of the Code of Civil Procedure are:
Art. 1761. In cases to be tried by jury, twelve jurors summoned in accordance with law shall be chosen by lot to try the case. The method of calling and drawing by lot shall be at the discretion of the court....
Art. 1763. The court shall permit the parties or their attorneys to conduct the examination of a prospective juror and may itself conduct an examination, which shall be limited to ascertaining the qualifications of the juror.
Art. 1765. A juror may be challenged for cause based upon any of the following:
* * * * * *
2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial:
* * * * * *
As to the scope and extent of voir dire examination, broad discretion rests in the trial judge. The trial judge's rulings will not be disturbed absent a clear abuse of discretion. The purpose of voir dire examination is to develop the prospective juror's state of mind not only to enable the trial judge to determine actual bias, but to enable counsel to exercise his intuitive judgment concerning the prospective jurors' possible bias or prejudice. The trial judge did not abuse the discretion granted to him by LSA-C.C.P. arts. 1761 and 1763.
Those jurors excused for cause stated, in effect, that they could not be impartial. The trial judge properly excused them for cause under LSA-C.C.P. art. 1765(2).
The trial judge had discretion to sequester prospective jurors to prevent their hearing voir dire examination of other jurors. LSA-C.C.P. art. 1761 expressly provides the method of calling jurors shall be at the discretion of the court. We distinguish State v. Ferdinand, 285 So.2d 530 (La.1973). In that criminal case, defendant was denied his request to have prospective jurors sequestered. It was not held that the trial judge could not sequester prospective jurors should conditions warrant their sequestration.
Plaintiff has failed to show that he was required to accept an unfavorable juror or that he suffered prejudice on the part of the jurors. There was no error committed in the manner in which the voir dire examination was conducted.
The jury verdict and judgment thereon is affirmed at plaintiff's costs.
Affirmed.