30 So.3d 1017 (2010)
Michael P. SCHOUEST
v.
Douglas J. BURR d/b/a Chilly's Sno Balls, John Doe and XYZ Insurance Company.
No. 09-CA-356.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 2010.
*1018 Michael A. Fenasci, Attorney at Law, New Orleans, LA, Wayne W. Yuspeh, Attorney at Law, Metairie, LA, for Plaintiff/Appellee.
Michael R. Zsembik, Attorney at Law, Metairie, LA, for Defendants/Appellants.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER and MARC E. JOHNSON.
MARC E. JOHNSON, Judge.
Defendants/Appellants, Douglas J. Burr d/b/a Chilly's Sno Balls and Travelers Indemnity Company of Connecticut (hereinafter referred to as "Travelers"), appeal the judgment from the 24th Judicial District Court, Parish of Jefferson, in favor of the Plaintiff/Appellee, Michael P. Schouest. For the following reasons, we affirm.

FACTS
This case arises from the slip and fall by Plaintiff that occurred at Chilly's Sno Balls stand on June 11, 2006. After purchasing *1019 three snowballs and being given a 12 inch by 12 inch container, Plaintiff descended the staircase of the snowball stand. While attempting to descend the second step, Plaintiff fell down the entire staircase and was injured. The steps in question were stipulated by Defendants to be in violation of proper and safe building requirements, in part having a difference of three and a half inches for a first riser and seven inches for the next riser.
A trial on this matter was held on September 29 and 30, 2008. At the conclusion of the trial, the jury awarded the full extent of medical damages, assigned 10% comparative fault, and awarded $337,500.00 to Plaintiff. From these awards, Defendants filed an appeal with this Court.

ASSIGNMENTS OF ERROR
Defendants appeal and assign the following as errors: 1) the trial court erred in failing to sustain repeated objections to statements made by opposing counsel during voir dire, which had no purpose other than to demonize a party in this case in a post-Katrina environment hostile to the insurance industry; and, 2) the trial court erred in failing to grant a new trial as a remedy for the above assignment after all issues were resolved by the jury against Defendants through the verdict.

LAW AND ANALYSIS

Motion for New Trial
Before addressing the merits of the specifications of error, we note that we must pretermit consideration of the denial of the Motion for New Trial. Denial of a motion for new trial is interlocutory and a non-appealable judgment. Roger v. Roger, 99-765 (La.App. 5 Cir. 1/12/00), 751 So.2d 354, 356; McCain v. Howell, 06-1830 (La. App. 1 Cir. 9/14/07), 971 So.2d 323, n. 1. The Louisiana Supreme Court has instructed the courts of appeal to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits when it is clear from the appellant's brief that he intended to appeal the merits of the case. See, e.g., Schultz v. Shultz, 02-2534, p. 3 (La.App. 1 Cir. 11/7/03), 867 So.2d 745, 746-747 (quoting Carpenter v. Hannan, 01-0467, p. 4 (La.App. 1 Cir. 3/28/02), 818 So.2d 226, 228-229, writ denied, 02-1707 (La.10/25/02), 827 So.2d 1153).
After review of Defendants' brief, it is obvious that they intended to appeal the admission of the statements made during voir dire by Plaintiff's attorney and the amount of damages awarded by the jury in correlation to the admission of the statements. Thus, we will address the appeal accordingly.

Voir Dire Statements
La. C.C.P. art. 1763(B) provides, "[t]he parties or their attorneys shall individually conduct such examination of prospective jurors as each party deems necessary, but the court may control the scope of the examination to be conducted by the parties or their attorneys." The purpose of voir dire is to develop the prospective juror's state of mind, not only to enable the trial judge to determine actual bias, but to enable counsel to exercise his intuitive judgment concerning the prospective jurors' possible bias or prejudice. Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224, 227 (La.App. 3 Cir. 1974). A trial judge is vested with broad discretion in regulating and supervising voir dire and in ruling on challenges, and his rulings governing the selection of a civil jury will be reversed only when a review of the entire voir dire reveals that the judge abused his broad discretion. Riddle v. Bickford, 00-2408 (La.5/15/01), 785 So.2d 795, 801.
*1020 Defendants contend that they were deprived of a fair trial due to the statements made by opposing counsel during the voir dire. Defendants further contend that these statements were totally irrelevant to the issues inherent in the trial of this matter, were inflammatory and nothing more than a calculated attempt to "demonize" Travelers as a member of the insurance industry.
As characterized by Defendants, the alleged most egregious examples of opposing counsel's statements are:
(A) Are you aware that the McDonald's coffee cup store [story] was promulgated by the insurance company people advertising it? [brackets supplied]
(B) We have seen what I call propaganda that has been smeared for (20) years...
(C) I can't get on an airplane without seeing an ad from some insurance company somewhere attempting to portray personal injury lawyers as animals, and the people they represent as less than human.
We will review each of these statements and the responses of both of the panels of the venire in their contexts.

First Panel

Statement C[1]
The transcript of the voir dire provides that Plaintiffs counsel stated the following during the first panel:
Does anyone have a problem in a personal injury matter rendering a money judgment for physical harm given to a human being as a result of somebody's wrongdoing, money judgment, to respond with money, because that is all we can do? Does anybody have any qualms about that? Any feelings about that? Anything like that? I've been doing that a long time, and for about 20 years now there has been a propaganda on the people of American conducted by billions of dollars in campaigns to brand people who come to courts of law as somehow frauds, fakes, frivolous lawsuits. Things of that nature. I'm sure you've seen it on T.V. I've read about it in Time Magazine. I can't get on an airplane without seeing an ad from some insurance company somewhere attempting to portray personal injury lawyers as animals, and the people that they represent as some kind of a lesser human. I would like you to tell me if you have seen any of this stuff.
In general, three panel members, Mary Parfait, Eric Washington, and Peggy Key, replied that they were familiar with that particular portrayal of lawyers and their clients that Plaintiffs counsel described. When asked if the portrayal had any impact on them, the panel members either replied that it had no impact or that it would depend on the case. After hearing the answers of those panel members, Plaintiffs counsel cautioned the entire venire by stating the following:
What we are looking for is a jury that will take the facts, the facts as they are elucidated and spoken from the witness stand, and apply the law that the judge will give you. The judge will be the law giver here, and the witnesses will give the facts. You will be able to do that, and disregard all of that stuff you have been hearing for 20 something years? Can you be fair and outright in that way?
Eric Washington stated that he had seen it on the television; however, he simply gave an answer of "I don't know" at that time. Natale Lopiccolo voiced his opinion *1021 of personal injury plaintiffs but felt that he could apply the facts and the law given by the judge.

Statement A
Immediately after his discussion with Karen Daboval about personal injury plaintiffs, Plaintiffs counsel had the following dialogue with her:
Plaintiffs Counsel: Of course you heard the story about McDonald's.
Karen Daboval: I've heard of that, like most people, but I don't think it will affect me.
Plaintiffs Counsel: Are you aware that the McDonald's coffee cup store [sic] was promulgated by the insurance company people advertising it? Are you aware of that?
Karen Daboval: No.
The attorneys then approached the bench, where Defendants' attorney objected to the dialogue. The trial court judge allowed the line of questioning in respect to the panel members' feelings on lawsuits.
Later, Plaintiffs counsel continued to ask Natale Lopiccolo the following:
Do you feel you could take the evidence, because I have asked everybody else, evidence from the witness stand and apply it to the law, putting aside any biases you may have for or against insurance companies? Because the fair question here is not just whether you can be fair to plaintiffs, but can you be fair to all parties? I will ask you to do that. Can you look at the cold hard facts, and administer the law as a general rule?
She responded, "Yeah, I think I can."
To the same question, Don Barrilleaux answered with the following:
To be honest, I'm against insurance companies right now seeing everything that is going on with deductibles with all of these people's houses messed up for the hurricane and ridiculous deductibles. No, I would be biased.
However, Don Barrilleaux was rehabilitated by Plaintiffs counsel and answered "Yes" that he would be able to put aside his biases against the insurance company and apply what the court required as a "fair American."

Statement B
After being asked to repeat the question by Gary Mourain, Plaintiffs counsel stated, "It has been a while. We have seen a lot of what I call propaganda that has been smeared for 20 years ." Defendants' counsel again objected to what he categorized as an attack on the insurance industry. The trial court judge allowed the statement because Gary Mourain asked Plaintiffs counsel to repeat the question.
Plaintiffs counsel continued his questioning with the following:
And it is my belief that there has been a campaign assaulting plaintiffs attorneys, a campaign assaulting people who go to court and make claims. Have you seen that campaign?
Gary Mourain answered that he was familiar with the claims and was not a big fan of attorneys. He also acknowledged that he would probably be judgmental. Jacqueline Simmons admitted that she knew of false personal injury cases originating from her place of employment. However, she stated that she would be able to put aside those experiences and follow the law.
At the conclusion of Plaintiffs counsel questioning of the first panel, he closed with the following:
I don't want to be unfair to any insurance company. We know what has happened in New Orleans; we know what has happened in Jefferson Parish; we know that insurance companies have *1022 been investigated as of recent relative to their issues with floods and winds, and all sorts of things.
Does anybody have any prejudices in here against insurance companies wherein the prejudices are so great that you can't render a fair verdict against them if we prove our case? No one?
The transcript of the voir dire does not document any response to the question by any of the panel members.

Second Panel
At the beginning of the voir dire of the second panel, Plaintiffs counsel addressed the panel with the following:
On the insurance companies, it puts a lot of news information out to the general public, and they talk about frivolous lawsuits, lawyers, personal injury, all sorts of things like that. I'll start over here. Did any of that have an impact on your feelings?
Kim Oswald did indicate that she would have a problem with weighing the evidence; however, she also indicated that her problem was due to her husband's experiences with lawsuits. Craig Zibilich later answered,
As best I could, yeah, but there is a small part of me that is going to be  I'd like to be honest and say no, it wouldn't, but I don't know. I'm going to be honest. I don't know. I'm not going to lie to you.
Other than the comments made by those two panel members, no other panel member indicated that they would not be fair and impartial.
After reviewing the entire voir dire, we find that the trial judge did not abuse his broad discretion in allowing the statements by opposing counsel. Although this Court does not condone several of the statements made by either counsel during the voir dire[2], the statements that were allowed by Plaintiffs counsel do not equate to a reversible error made by the trial court. Both Plaintiffs counsel and the trial judge admonished the jury. None of the answers from the members of either panel indicated they were negatively influenced by Plaintiffs counsel's line of questioning against Defendants. Throughout the voir dire, both parties emphasized that the jury was to consider the evidence presented at trail and the law as they were instructed by the trial court. At the conclusion of the impaneling of the jury, all of the jurors chosen affirmed that they would remain unbiased and fair during the trial and in their decision. Therefore, this Court will not disturb the trial court's rulings.

Influence of Statements on Jury's Verdict
It is well-settled that a Court of Appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Evans v. Lungrin, 97-0541(La.2/6/98), 708 So.2d 731, 735 citing Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). However, where one or more trial court legal errors interdict the factfinding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Evans v. Lungrin, 708 So.2d at 735. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Id. citing Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). Legal errors are *1023 prejudicial when they materially affect the outcome and deprive a party of substantial rights. Evans v. Lungrin, 708 So.2d at 735.
The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Harvin v. ANPAC Louisiana Ins. Co., 06-204 (La.App. 5 Cir. 10/17/06), 944 So.2d 648, 657 citing Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact". Harvin, 944 So.2d at 657. Before a Court of Appeal can disturb an award made by a fact finder, the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Id. at 657-658. Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Burgard v. Allstate Ins. Co., 04-1394 (La.App. 5 Cir. 5/31/05), 904 So.2d 867, 880.
In the brief, Defendants argue that the jury's verdict and award were influenced by the statements made by Plaintiffs counsel during the voir dire. Because of the alleged influence, Defendants further argue that the amount awarded to Plaintiff should be reduced by 50% comparative fault because it is inconsistent with the treatment and the evidence presented at trial. The jury found Plaintiff to be 10% comparatively at fault and awarded $337,500.00 to him.
After de novo review of the complete record, we find that the trial court did not commit a legal error by allowing the statements previously discussed in this opinion by Plaintiffs counsel. Further, we find that the verdict and award rendered by the jury was not an abuse of discretion correlated to the alleged misconduct of Plaintiff's counsel. Ultimately, the jury decided in favor of Plaintiff and determined an award amount based upon the evidence presented during trial. There is not sufficient evidence to convince this Court that the jury was prejudiced against Defendants and to reverse the jury's verdict and award. Therefore, this Court will not disturb the jury's verdict or award.

CONCLUSION
For the foregoing reasons, we affirm the trial court's rulings. Defendants are to bear the court costs for this appeal.

AFFIRMED.
WICKER, J., Concurs and Assigns Reasons.
WICKER, J., concurs and assigns reasons.
I respectfully concur. I write separately because I feel compelled to emphasize that I disapprove of plaintiff's counsel's method of ascertaining bias by referring to alleged advertisements by the insurance industry. I am convinced that such irrelevant and unsubstantiated comments clearly have the potential for invoking passion and prejudice. It is apparent that plaintiffs counsel was attempting to determine whether the members of the venire had any bias against the plaintiff because of personal views about personal injury lawsuits based on insurance advertisements criticizing personal *1024 injury lawyers. While this is a legitimate area of questioning during voir dire, counsel's questioning bordered on an appeal to passion and prejudice. However, in my view, and after a careful review of the entire record of these proceedings, the potential for passion and prejudice and an unfair jury verdict was mitigated by the following: (1) The trial judge instructed the jury that the arguments of counsel were not evidence. (2) The trial judge instructed the jury that the case should be considered and decided as an action between persons of equal standing in the community and that a corporation is entitled to the same fair trial as is a private individual. (3) The trial judge instructed the jury that the jury must not base its deliberations on any differences as to the status of parties. (4) Both parties made it clear to the jury that arguments did not constitute evidence. (5) Plaintiffs counsel, in his introductory comments to the prospective jurors and in questioning prospective jurors, asked them to be fair not only to his client but to the defendants. (6) During voir dire of the first panel, plaintiffs counsel made clear that he did not want to be unfair to any insurance company. (7) During the voir dire of the second panel, plaintiffs counsel stated that this case had nothing to do with any insurance company's advertising. (8) Throughout the voir dire, both parties emphasized that the jury was to consider evidence presented at trial and the law as they were instructed by the trial court. (9) During plaintiffs counsel's opening and closing statements, he made no reference to abuses in the insurance industry. (10) During closing arguments, defense counsel explained that this case had nothing to do with the insurance industry, plaintiff advertising, or insurance company advertising.
Therefore, in reviewing the record as a whole, and considering the circumstances of this case, I believe that such comments did not invoke such passion and prejudice that the rights of the defendants were unduly impaired. Given the plaintiffs expert's unrefuted testimony in evaluating the ultimate verdict of the jury, I am not convinced that the jury was so biased against the insurance industry that it rendered the verdict that it did.
Therefore, I write separately to concur in the result reached by the majority.
NOTES
[1] Although Defendants listed the statements in a particular order in their brief, we will address the statements in the order they took place, according to the transcript of the voir dire.
[2] The counsel for both parties made statements which could be considered inflammatory concerning the opposing side.