# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-137


**DANIEL T. GUIDRY, ET AL.**

**VERSUS**

**PRIME INSURANCE COMPANY, ET AL.**



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2017-3590
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.


**AFFIRMED AND REMANDED.**

**Randall A. Smith**
**J. Geoffrey Ormsby**
**Smith & Fawer, L.L.C.**
**201 St. Charles Avenue, Suite 3702**
**New Orleans, Louisiana 70170**
**(504) 525-2200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Prime Insurance Company**

**Jordan Z. Taylor**
**The Townsley Law Firm, LLC**
**3102 Enterprise Boulevard**
**Lake Charles, Louisiana 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Daniel T. Guidry**
    **Diana Guidry**

**Frank X. Neuner, Jr.**
**Jennifer M. Ardoin**
**Katelyn E. Bayhi**
**NeunerPate**
**One Petroleum Center**
**1001 W. Pinhook Road, Suite 200**
**Lafayette, Louisiana 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Terry Graham Trucking, Inc.**
    **Elvis Dean Thompson**

**SAVOIE, Judge.**

This appeal arises out of a multi-vehicle accident which occurred on Interstate 210 in Lake Charles, Louisiana. As a result of the accident, Plaintiffs Daniel T. Guidry and Diana Guidry filed suit against Defendants Prime Insurance Company (Prime), Terry Graham Trucking, Inc., and Elvis Dean Thompson. After a jury trial, the jury found in favor of Plaintiffs, awarding a total damage award of $1,267,252.56.00. Defendants now appeal. For the following reasons, we affirm and remand this case to the trial court.

## FACTS AND PROCEDURAL HISTORY

This matter involves a multi-vehicle accident that occurred on Interstate 210 in Lake Charles, Louisiana. On March 31, 2017, Defendant Elvis Thompson was operating a truck and trailer owned by Defendant Terry Graham Trucking, Inc. (Graham) and insured by Defendant Prime Insurance Company (Prime). Mr. Thompson was traveling east on I-210. The vehicle traveling immediately in front of Mr. Thompson was being operated by Tracey Day. The vehicle immediately in front of Ms. Day was being operated by Teresa Jeffries. Mr. Thompson rear-ended the Day vehicle which in turn rear-ended the vehicle operated by Ms. Jeffries. After colliding with the Day vehicle, Mr. Thompson veered into the right lane and struck the vehicle being operated by Mr. Guidry.

As a result of the accident, Mr. Guidry suffered injuries to his back, neck, and shoulder. Mr. Guidry and his wife, Diana Guidry, filed suit against Mr. Thompson, Graham, and Prime. On March 19, 2021, Mr. Thompson and Graham filed a Judicial Confession of Liability acknowledging: (1) the accident was caused by the sole negligence and/or fault of Elvis Thompson; (2) Plaintiffs Daniel and Diana Guidry have no comparative fault for the accident; and (3) Elvis Thompson was acting in

the course and scope of his employment with Graham at the time of the accident and, thus, Graham is vicariously liable for Mr. Thompson's negligence.

A jury trial was fixed for May 24, 2021. On May 27, 2021, the jury returned a verdict finding Graham 40% at fault for the accident and Mr. Thompson 60% at fault. Finding that the accident caused Mr. Guidry's injuries, the jury awarded him and his wife $1,267,252.56 in total damages. Thompson, Graham, and Prime now appeal.[1]

## THOMPSON AND GRAHAM'S ASSIGNMENTS OF ERROR

1. The trial court erred in allowing evidence of liability to be presented to the jury when Defendants had entered a judicial confession of liability, and the only issues to be tried were the nature and extent of Plaintiffs' damages.

2. The trial court erred in excluding evidence and testimony regarding Mr. Guidry's pre-existing medical conditions, specifically hepatitis C and stage 4 liver cirrhosis, which went directly to the issues of future medical expenses and life expectancy.

3. The trial court erred by failing to instruct the jury that an award for future medical expenses is based on whether it is more likely than not the plaintiff will incur the future medical expenses, causing the jury to award $750,000.00 in future medical expenses to Mr. Guidry.

4. The trial court erred by instructing the jury that one of the purposes of our tort system is to deter conduct yet failing to instruct the jury that punitive damages were not to be awarded, despite Defendants' numerous objections.

5. The trial court abused its discretion by prohibiting cross-examination of Dr. William Brennan, Mr. Guidry's expert neurosurgeon and treating physician, on prior inconsistent statements relating to Dr. Brennan's recommendation that Mr. Guidry undergo two adjacent level surgeries in the future.

6. The jury abused its discretion in awarding Mr. Guidry $250,000.00 in damages for disability, considering testimony and surveillance video evidencing Mr. Guidry was not precluded from doing things he enjoyed.

---

[1] In addition to the Guidry Plaintiffs, the Jeffries Plaintiffs and the Day Plaintiffs filed separate suits against Defendants.

7. The trial court erred in refusing to excuse biased jurors for cause during voir dire proceedings, thus requiring Defendants to exhaust all peremptory challenges before the tenth juror was chosen and distorting the makeup of the sitting jury.

## PRIME'S ASSIGNMENTS OF ERROR

1. The trial court erred in denying Prime's Motion for Summary Judgment on the "single versus multiple accident" issue for purposes of interpreting Prime's insurance policy. Alternatively, the court erred by not allowing the jury to determine whether the impact between Guidry's and Graham's vehicles was part of a single accident involving other vehicles and impacts.

2. The trial court erred in allowing plaintiffs to present evidence of liability where defendants Thompson and Graham made a judicial confession of sole liability, and by instructing the jury on tort "public policy" and liability issues.

3. The trial court erred in excluding Defendants' relevant evidence of Guidry's pre-existing health conditions, life expectancy, likelihood of undergoing future surgeries, and extent of disability, and it compounded that error by rebuking defense counsel (in front of the jury) for asking questions related to Guidry's pre-existing health conditions.

## I. *Introduction of Liability Evidence*

Defendants complain that the trial court erred in allowing evidence of liability to be presented when Defendants had entered a judicial confession of liability. They argue that allowing this evidence only served to inflame the jurors' senses and was prejudicial to Defendants. Defendants further allege that the only issues for the jury were causation and damages.

Defendants specifically argue that the trial court erred in denying the Motion in Limine to exclude the testimony of Jeff Vick, Plaintiffs' trucking safety expert. Vick testified regarding the alleged lack of maintenance of the truck driven by Thompson, the worn tread on the tires, the alleged brake failure, and overall safety regulations for truck drivers. Defendants maintain that the only purpose this testimony serves is to paint them in a bad light.

Plaintiffs counter that they pled theories of Graham's direct negligence, in addition to Thompson's negligence. These theories include negligent hiring, negligent supervision, negligent entrustment of their 18-wheeler to Thompson, and lack of maintenance. Graham's own negligence was disputed continuously throughout the trial by Defendants. Plaintiffs point out that the judicial confession only addresses Thompson's negligence, not Graham's negligence. Therefore, Mr. Vick's testimony was relevant to Plaintiff's claims against Graham.

The Judicial Confession of Liability reads:

1.

That the motor vehicle accident that is the subject of this litigation which occurred on March 31, [2017], was caused by the sole negligence and/or fault of Elvis Thompson, and that Plaintiffs, Daniel T. Guidry and Diana Guidry, have no comparative fault for the subject accident.

2.

That Elvis Thompson was acting in the course and scope of his employment with Terry Graham Trucking, Inc. at the time of the aforementioned accident, and as such, Terry Graham Trucking, Inc. is vicariously liable for Elvis Thompson's negligence.

3.

That this Judicial Confession is irrevocable and will not be altered, disputed or denied by these Defendants at trial of this matter.

4.

This Judicial Confession is specifically limited to the issues of liability and course and scope of employment, as Defendants continue to dispute the alleged injuries and damages being claimed by Plaintiffs, as well as the causation of said alleged injuries and damages.

"A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." La.Civ.Code art. 1853. "A judicial confession is a party's explicit admission of an adverse factual

element and has the effect of waiving evidence as to the subject of the admission-of withdrawing the subject matter of the confession from issue." *Cichirillo v. Avondale Industries, Inc.*, 04-2894, p. 6 (La. 11/29/05), 917 So.2d 424, 429.

"Appellate court[s] review evidentiary rulings of a trial court using the abuse of discretion standard." *Acadiana Renal Physicians v. Our Lady of Lourdes Regional Medical Center, Inc.*, 22-16, p. 5 (La.App. 3 Cir. 1/28/22), 334 So.3d 1, 6, *writ denied*, 22-343 (La. 4/5/22), 335 So.3d 833.

When denying the Motion *in Limine*, the trial court ruled:

I'm going to allow the evidence of direct negligence of Graham Trucking. I'm persuaded that that's appropriate to give the jury the facts regarding all aspects of liability; and the attempt to shield Graham Trucking through a judicial confession limits the full story being told.

We agree that the evidence was properly admitted. The judicial confession in this matter only encompasses Thompson's negligence. It does not admit to any negligence on the part of Graham, except as it pertains to its vicarious liability for Thompson's negligence. An employer's vicarious liability does not shield or subsume the employer's negligence for its own separate negligent actions. *See Martin v. Thomas*, 21-1490 (La. 6/29/22), 346 So.3d 238. As such, the evidence presented was necessary to prove Plaintiffs' claims of direct negligence against Graham. Further, we disagree with Defendants that the issue of liability was not before the jury. The first question on the Verdict Form asks the jury to assign the degree of fault attributable to Graham and Thompson. Assigning fault is an assessment of liability. *Upchurch v. State ex rel. Louisiana Dep't of Transp. & Dev.*, 48,354 (La.App. 2 Cir. 8/7/13), 123 So.3d 228, *writ denied*, 13-2153 (La. 11/22/13), 126 So.3d 489. For these reasons, we do not find that the trial court abused its

5

discretion in allowing certain liability evidence to be presented to the jury. This assignment lacks merit.

## II. *Excluding Evidence of Pre-Existing Medical Conditions*

Defendants next contend that the trial court erred in excluding evidence and testimony regarding Mr. Guidry's pre-existing medical conditions, specifically Hepatitis C and Stage Four Liver Cirrhosis, claiming this evidence went directly to the issues of future medical expenses and life expectancy.

This issue arose during the testimony of Dr. Samer Shamieh. Dr. Shamieh is an orthopedic spine surgeon, and he was accepted as Defendants' expert in orthopedic spine surgery. During his testimony, Defense counsel asked him whether it would be safe to do a lumbar surgery and a cervical surgery on a patient who has advanced liver disease. Plaintiffs objected, citing a Motion in Limine granted prior to trial that excluded evidence of Hepatitis C. Defendants argued that the subject of the Motion in Limine was Hepatitis C, not cirrhosis of the liver. The trial court found that Defendants were in violation of the Motion in Limine.

Defendants proffered Dr. Shamieh's testimony. Dr. Shamieh was asked to assume Mr. Guidry had advanced liver disease, when answering questions about Mr. Guidry ability to have the recommended surgery. On cross-examination, Plaintiffs' counsel showed Dr. Shamieh a radiology report of Mr. Guidry from March 2018. This report reads "normal liver." Dr. Shamieh was then asked whether the report would come back normal if Mr. Guidry had end-stage liver disease, Dr. Shamieh answered, "Most likely, no." On cross-examination, Dr. Shamieh admitted that he did not examine Mr. Guidry and, therefore, he could not give an opinion that Mr. Guidry has any type of liver disease.

6

In addition to Defendants' proffer, Plaintiffs' proffered evidence that anti-viral medication cures 98% of patients diagnosed with Hepatitis C.

Mr. Guidry was diagnosed with Hepatitis C in 2008. Mr. Guidry testified that he was given medicine, and since that time, he has not seen a doctor or been treated for Hepatitis C. He also testified that, at the time of trial, he did not take any medicine for either Hepatitis C or liver disease. Mrs. Guidry testified that, after Mr. Guidry was treated for Hepatitis C, he was cured of the disease.

In *Maturin v. Bayou Teche Water Works, Inc.*, 20-257, p. 19 (La.App. 3 Cir. 12/16/20), 310 So.3d 627, 639, *writ denied*, 21-68 (La. 3/2/21), 311 So.3d 1061 (quoting *Chenevert v. Hilton*, 07-1223, p. 9 (La.App. 3 Cir. 3/5/08), 978 So.2d 1078, 1085, *writ denied*, 08-731 (La. 5/30/08), 983 So.2d 901), the court explained:

> Louisiana Code of Evidence Article 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While relevant evidence is generally admissible pursuant to Article 402, it may "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403. A trial court's determination as to the relevance and admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. *Johnson v. First Nat. Bank of Shreveport*, 00-870 (La.App. 3 Cir. 6/20/01), 792 So.2d 33, *writ denied*, 01-2770 (La. 1/4/02), 805 So.2d 212, *writ denied*, 01-2783 (La. 1/4/02), 805 So.2d 213.

Dr. Shamieh was accepted as an expert in orthopedic spine surgery. He was not accepted as an expert in Hepatology. Defendants did not put forth any experts capable of discussing Mr. Guidry's alleged diagnosis of end stage liver disease. The proffered evidence by Dr. Shamieh only *assumes* Mr. Guidry has end stage liver disease. We find no evidence in the record that proves Mr. Guidry was diagnosed with Hepatitis C or Stage Four Liver Disease at the time of trial. In fact, the evidence

on cross-examination of Dr. Shamieh's proffered testimony shows Mr. Guidry had normal liver function in 2018. Dr. Shamieh admitted that if Mr. Guidry had end stage liver disease, the radiology report would not have shown normal liver function. We find that the trial court did not abuse its discretion in excluding evidence of Mr. Guidry's alleged Hepatitis C and Stage Four Liver Disease, when Defendants did not proffer any evidence proving Mr. Guidry suffered from these diseases at the time of trial. This assignment lacks merit.

### III.    *Jury Instructions*

In two assignments of error, Graham and Thompson contend that the trial court failed to adequately charge the jury. First, they claim that the trial court failed to give a balanced instruction on the subject of future medical expenses. Next, Graham and Thompson argue that the trial court erred when it failed to instruct the jury that punitive charges were not to be considered. Graham and Thompson assert that the trial court committed legal error, which warrants *de novo* review.

In *Johnson v. First National Bank of Shreveport*, 00-870, pp. 23-24 (La.App. 3 Cir. 6/20/01), 792 So.2d 33, 52, *writs denied*, 01-2770, 01-2783 (La. 1/4/02), 805 So.2d 212, 213, a panel of this court explained:

> The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; however, he must correctly charge [the] jury. *Lewis v. Wal–Mart Stores, Inc.,* 546 So.2d 267 (La.App. 3 Cir.1989). Adequate jury instructions are those which fairly and reasonably point to the issues and to the principles of law for the jury to apply to those issues. *Lee v. Automotive Cas. Ins. Co.,* 96–517 (La.App. 3 Cir. 11/6/96); 682 So.2d 995, *writ denied,* 96–2949 (La.1/31/97); 687 So.2d 409. Our court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. *Id., Doyle v. Picadilly Cafeterias,* 576 So.2d 1143 (La.App. 3 Cir.1991). Under the manifest error standard of review, we will not reverse unless the jury instructions are so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts. *Lewis,* 546 So.2d 267.

Accordingly, we will review these issues under a manifest error standard of review.

**A. Future Medical Expenses**

Graham and Thompson complain that the charge to the jury on future medical expenses did not include a complete statement of the law because it did not state the burden of proof. The following colloquy occurred on the record about the jury instructions to be read to the jury, specifically the charge on future medical expenses:

BY THE COURT:
>The future medical is the last paragraph of medical expenses on Page 6, so that's good. Anything else?

BY MR. GREEN:
>Your Honor, that is not the complete statement of law on the burden of proof on future medical expenses. It's more likely than not, basis. That's all we're asking for.

BY MR. TOWNSLEY:
>That's true of everything, and you've already said that multiple times in the charges.

BY MR. DILL:
>But the law is that it's more probable than not will be incurred is the language that we feel is missing.

BY THE COURT:
>No. We are good on that.

The Jury Instructions, on page one, reads:

### BURDEN OF PROOF

The plaintiffs have the burden to prove their case, but the plaintiffs are not obligated to furnish conclusive proof. The plaintiffs must only prove their case by a "preponderance of the evidence." This means to prove that something is more likely true.

On page six, the Jury Instructions state:

### MEDICAL EXPENSES

The next element is medical expenses. To recover medical expenses, the plaintiff must prove the medical treatment was more

likely than not necessitated by the [incident]. Medical records, bills, and the plaintiff's testimony can be used to satisfy this requirement absent some contradictory evidence.

. . . .

An injured part has a right to recover for the cost of future medical treatments and these damages should be denied because it is impossible to establish exactly the nature and extent of the treatment that will be required and the exact cost of it.

Upon reviewing the Jury Instructions in this case, we find them to adequately state the law regarding future medical expenses. The burden of proof of "more likely than not" requested by Defendants was stated under the "Burden of Proof" heading on page one of the jury instructions and, again, on page six under the heading "Medical Expenses." As such, we do not find that the trial court manifestly erred in charging the jury on future medical expenses.

**B. Punitive Damages**

Next, Graham and Thompson argue that the trial court failed to instruct the jury that punitive damages should not be considered.

The following excerpt is from a discussion of the jury instructions on the record:

BY THE COURT:
Okay. Folks, I'm going to add the Plaintiff's No. 1 to the Jury Instructions right after the quotation of Article 2315.

I've added it to my draft. You all were e-mailed the draft. I've got paper copies if you need that of the Jury Charge and the Verdict Sheet here.

BY MR. DILL:
Your Honor, we did have one other thing. One is if you're going to add Number 1, Judge, there is no instruction in the current charges that tells the Jury not to award punitive damages.

BY THE COURT:

10

Okay. Well, we're not going to - - this doesn't tell them to award punitive damages. So we don't need to highlight that. There are no punitive damages. You can't punish people.

BY MR. DILL:

And I agree with Your Honor, but it doesn't say that in the Jury Charge.

BY THE COURT:

Well, we can put a lot of things in the Jury Charge of what you shouldn't do; but then we'd be up here reading it all day. So since we haven't said, you can; then we don't need to say, you can't.

The Jury Instructions state:

## ARTICLE 2315 – FAULT

I call your attention [to] the words of Article 2315 of our Civil Code:

*Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.*

The major public policy goals of our tort system are "deterrence," "accident prevention," and "compensation." Our law requires full compensation for injuries caused by another's fault. Your verdict should be designed to fully and fairly compensate the plaintiffs, no more and no less.

The model jury instructions on this issue found in the Louisiana Civil Law

Treatise reads:

If you decide that the plaintiff has established the other elements of his case by a preponderance of the evidence, and the defendant has failed to establish a defense which would prevent plaintiff from recovering an award for his injuries, you must decide the question of whether there has been damage to his person or his property and if so, the amount of that damage.

In this regard, I recall to your attention the words of Article 2315 of our Civil Code:

Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.

This article, and our law, suggest simple reparation, a just and adequate compensation for injuries. [It suggests no idea of revenge or

punishment. Accordingly, our law does not permit the awarding of damages to punish the defendant, or make an example of him to prevent other accidents, and you should include no such amount in your award.] Your award should be designed to fully and fairly compensate the plaintiff for his injury, if you find one has occurred, and should not go beyond such reparation.

H. Alston Johnson, III, 18 La. Civ. Law Treatise, Civil Jury Instructions § 18:1 (3d ed.). In the comments to this instruction, Johnson explains "[t]he material in brackets in the second paragraph should be included unless punitive damages are awardable." The material in brackets is similar to the language requested by Graham and Thompson.

Punitive damages were not awardable in the present case. Therefore, under the guidance of the Louisiana Civil Law Treatise, we find that the language found in the bracketed material, or something similar, should have been given to the jury. However, "[t]he manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts." *Jones v. Bravata*, 18-837, p. 4 (La.App. 1 Cir. 5/9/19), 280 So.3d 226, 231. "Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." *Id.* at 232.

The jury awarded the following damages to Mr. Guidry in this case:

| | |
|---|---|
| Past Medical Expenses | $53,252.56 |
| Future Medical Expenses | $750,000.00 |
| Past Pain and Suffering | $25,000.00 |
| Future Pain and Suffering | $104,000.00 |
| Past Loss of Enjoyment of Life | $10,000.00 |
| Past Mental Anguish | $5,000.00 |
| Future Mental Anguish | $20,000.00 |
| Disability | $250,000.00 |

Mrs. Guidry was awarded $5,000.00 for loss of consortium bringing the total award to $1,267,252.56. The evidence shows that Mr. Guidry's lifecare plan ranged

12

had a range of $755,814.99 to $1,627,71.01. Adjusted for inflation at the time of trial, Mr. Guidry's economist testified that the range of Mr. Guidry's lifecare plan would be $771,455.00 to $1,666,811.00. The jury awarded Mr. Guidry $750,000.00 in future medical expenses, which is below the low end of his lifecare plan.

In *Jeffries v. Prime Insurance Co.*, 21-161 (La.App. 3 Cir. 11/3/21), 334 So.3d 761, *writs denied*, 21-1811, 21-1817 (La. 2/22/22), 333 So.3d 433, 436, the plaintiff, Teresa Jeffries, filed suit for injuries she sustained as a result of the same multi-car collision in the present case. Ms. Jeffries suffered similar injuries to Mr. Guidry, including a neck injury and aggravation of a back injury, which required surgery. The jury in the *Jeffries* case awarded Ms. Jeffries damages totaling $2,508.853.00. This is approximately double the jury awarded Mr. Guidry in his case.

Based on the foregoing, we cannot say that the amount awarded to Mr. Guidry in damages is beyond that which a reasonable trier of fact could assess. Graham and Thompson were not prejudiced by the refusal of the trial court to include a jury charge that damages should not be punitive in nature, as they argued. The determinative question is whether the jury instructions misled the jury and prevented justice. *See Jones*, 280 So.3d 226. We do not find that they did. This assignment is without merit.

### IV. Dr. Brennan's Testimony

In this assignment of error, Graham and Thompson argue that the trial court abused its discretion by prohibiting cross-examination of Dr. William Brennan, Mr. Guidry's expert neurosurgeon and treating physician, on prior inconsistent statements made by Dr. Brennan. During a colloquy about the potential risk a patient has of developing adjacent segment disease after a fusion, Dr. Brennan testified "there's a [three] percent chance of a surgery the following year." On cross-

13

examination, counsel for Thompson and Graham attempted to question Dr. Brennan about inconsistent statements he made during a deposition in a separate and unrelated litigation. Plaintiffs' counsel objected, and the objection was sustained. Graham and Thompson maintain they were prejudiced by the exclusion of this evidence.

In *Randazzo v. St. Bernard Parish Government*, 16-902 (La.App. 4 Cir. 5/17/17), 219 So.3d 1128, *writ denied*, 17-1209 (La. 10/27/17), 228 So.3d 1236, defendants filed motions for summary judgment with selected pages from depositions taken in other lawsuits attached as exhibits. The fourth circuit found, because Plaintiff was not present, represented at or had notice of the depositions, which is required by La.Code Civ.P. art. 966, the depositions were not competent summary judgment evidence. Regarding whether the admission of this evidence affected Plaintiff's substantive rights, the fourth circuit found:

> Appellant was denied the right of cross-examination, the importance of which "cannot be minimized in civil cases." *Trascher v. Territo*, 2011-2093, p.4 (La. 5/8/12), 89 So.3d 357, 362 (internal quotations omitted) (citations omitted). As the Louisiana Supreme Court stated in *Trascher*, "[t]he thrust of La. C.C.P. art. 1450, particularly Paragraph A, seems to be that the party against whom a deposition is sought to be used must have been afforded a meaningful opportunity to cross-examine the deponent." *Id.*, 2011–2093 at pp. 6–7, 89 So.3d at 363. Because Appellant was deprived of this substantial right, the district court's admission of this evidence constitutes reversible error.

Louisiana Code of Evidence Article 1450(A) (emphasis added) states:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, *may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof*.

Plaintiffs were not present, represented at, nor did they have notice of Dr. Brennan's deposition in the separate and unrelated litigation. Further, Plaintiffs

were denied the substantial right of cross-examination in that deposition. Accordingly, we find the trial court did not abuse its discretion in excluding Dr. Brennan's deposition testimony taken in a separate and unrelated lawsuit.

### V. Disability Award

Next, Graham and Thompson submit that the jury abused its discretion in awarding Mr. Guidry $250,000.00 in damages for disability.

> General damages are reviewed for an abuse of discretion because the [jury] "is in the best position to evaluate witness credibility and see the evidence firsthand." *Bouquet v. Wal-Mart Stores, Inc.*, 08-309, p. 4 (La. 4/4/08), 979 So.2d 456, 459. "The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact." *Cormier v. CITGO Petroleum Corp.*, 17-104, p. 4 (La.App. 3 Cir. 10/4/17), 228 So.3d 770, 776, *writ denied*, 17-2138 (La. 2/9/18), 237 So.3d 491. The trier of fact has great, even vast discretion in awarding general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

> . . . Additionally, in reviewing a general damage award, "a court does not review a particular item in isolation; rather, the entire damage award is reviewed for an abuse of discretion, and if the total general damage award is not abusively high, it may not be disturbed." *Pennison v. Carrol*, 14-1098, pp. 14-15 (La.App. 1 Cir. 4/24/15), 167 So.3d 1065, 1078, *writ denied*, 15-1214 (La. 9/25/15), 178 So.3d 568.

*Lantier v Caskey*, 19-687, p. 10 (La.App. 3 Cir. 11/12/20), 308 So.3d 758, 766-67.

"Disability is awardable as an element of general damages." *Cormier v. Republic Ins. Co.*, 11-632, p. 5 (La.App. 3 Cir. 1/18/12), 118 So.3d 16, 20.

In the present case, several witnesses testified as to Mr. Guidry's activity levels pre- and post-accident. Myra Geheb is Mr. Guidry's stepdaughter. She testified that her stepfather was very active prior to this accident. He was a tree cutter by trade. He would climb trees, cut them, and pull them down as part of his employment with the tree service. She explained that Mr. Guidry was the type of person who never sat still. Since the accident, she related that he is not able to do

nearly the amount of physical labor that he could prior to the accident. She further explained that if he is a little more active one day, the next day he can hardly move. She testified that she and her mother make up the couch for him to lay on, take him his medicine, and bring his food or anything else he needs to him throughout the day. On these days, he needs to be helped from the couch to his bedroom or bathroom. Ms. Geheb testified that he is miserable that he can not do for himself.

Defendants introduced a surveillance video taken of Mr. Guidry taken from September 2020 through May 2021. This video shows Mr. Guidry working for his nephew's flooring company. Ms. Geheb explained that Mr. Guidry does try to work because he and his wife need the money to pay the bills. She testified that after a day of working, Mr. Guidry is in a lot of pain.

Diana Guidry, Mr. Guidry's wife, testified similarly to Ms. Geheb. She added that Mr. Guidry has changed a lot since the accident. Because of the pain he is in, Mrs. Guidry has to help him pull off his shoes and socks, help him into the bathtub, and bring his supper to him on the couch. She testified that Mr. Guidry has to take pain medicine multiple times a day in order to get through the day. She stated that Mr. Guidry "practically cries" when the pain medicine wears off. She further testified that when something needs to be fixed around the house, they call the landlords; however, Mr. Guidry is able to mow the grass with a zero-turn lawn mower.

Mr. Guidry testified regarding the change in his abilities since the accident. He stated that prior to the accident he loved to hunt, fish, catch and clean turtles, and cook. He now has neck, back and shoulder pain after the accident which prevents him from doing the things that he loves. For instance, he can no longer stand for long in front of a stove. He explained that he stays in pain. He takes pain medication

16

three times a day to get through his day, sometimes more if it is a particularly bad day. He related that he has to work to pay the bills and that he works through the pain. He worked for a tree service prior to the accident, but he is no longer able to do that kind of work. He works for his nephew's flooring company two to three times a week. Before the accident, he worked five to seven days a week. He explained that his nephew does the heavy lifting. Mr. Guidry testified that when the pain medication wears off, he lays on the couch and can't do anything. The pain wakes him up at night, and he has a lot of cramping.

Mr. Guidry was awarded $53,252.56 in past medical expenses and $750,000.00 in future medical expenses. The total amount of general damages, including the disability award is $414,000.00. After a review of the testimony and evidence in the record, we find that the jury was within its discretion in awarding Mr. Guidry $250,000.00 in disability damages. Given the future surgery, the effect the accident has had on his life, plus the limitations it has caused him, we cannot say that the jury abused its discretion. As such, we do not find that Mr. Guidry's disability award was excessive.

### VI. Voir Dire

Graham and Thompson next complain that the trial court erred when it refused to excuse biased jurors for cause during the *voir dire* proceedings. Defendants argue that this led to them exhausting all of their peremptory challenges before the tenth juror was chosen, which they claim distorted the makeup of the jury.

"The purpose of voir dire examination is to develop the prospective juror's state of mind not only to enable the trial judge to determine actual bias, but to enable counsel to exercise his intuitive judgment concerning the prospective jurors'

17

possible bias or prejudice." *Trahan v. Odell Vinson Oil Field Contractors, Inc.*, 295 So.2d 224, 227 (La.App. 3 Cir. 1974).

> The importance of a juror's ability to be fair and impartial is addressed in La.Code Civ.P. art. 1765(2), which provides that a juror may be challenged for cause when he "has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." When a juror's ability to be impartial is challenged, the trial court must determine whether the juror can put aside his personal thoughts and apply the law as instructed. "[I]f a prospective juror is able to declare to the [trial] court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied." *Scott v. Am. Tobacco Co.*, 01-2498, p. 6 (La. 9/25/01), 795 So.2d 1176, 1182. The trial court is vested with broad discretion in ruling on challenges for cause, and its rulings on such challenges will be reversed only when "a review of voir dire as a whole indicates an abuse of discretion." *Bannerman v. Bishop*, 28,382, p. 3 (La.App. 2 Cir. 7/2/96), 688 So.2d 570, 572, *rev'd on other grounds on reh'g*, (10/16/96), *writ denied*, 96-2755 (La. 1/10/97), 685 So.2d 146.

*Sensat v. R360 Environmental Solutions, Inc.*, 19-623, pp. 4-5 (La.App. 3 Cir. 3/11/20), 297 So.3d 52, 55-56, *writ denied*, 20-772 (La. 10/6/20), 302 So.3d 529.

Counsel asked for a show of hands from prospective jurors who were anti-corporation and would do whatever they could to hurt the corporation or from anyone who thought they were evil and bad. Lillian Avery raised her hand and stated:

> I don't like the fact that they could be treated as - - as people and that they have so much power in the political space and - - or oftentimes don't treat their employees as well as they could. And not only that they're given better benefits than regular people, they're given better tax breaks. They're given exemptions versus regular individuals who are busting their butts and they pay their taxes.

When asked if she wanted to punish corporations, she stated that she would not punish them, and she later stated that she could be fair.

Graham and Thompson complain that Leah Pohorelsky should have been excused for cause. When asked if the corporate client was "starting behind" the plaintiff, Mrs. Pohorelsky stated:

> I don't know - - I don't know. I mean I don't - - I want to be a fair and impartial person but I also don't blame - -
>
> . . . .
>
> I also don't like to see ordinary people get - - get stepped on or taken advantage of or things like that.

Later she stated that she thought she could be impartial, but maybe the corporation was starting "a little bit further" back. She seemed unsure. However, in a later colloquy, Mrs. Pohorelsky was asked whether some people exaggerate in lawsuits, she stated: "I think that there are people that exaggerate or - - and take advantage of the system, but as a whole, I think the legal system works in that regard, and so maybe that puts me back again in the middle."

Next, Defendants assert that Carl Voss should have been struck for cause. Mr. Voss was asked whether any of the prospective jurors felt like this was their chance to get even with the insurance company. Mr. Voss testified that although he did not like insurance companies, he would not "lower [his] integrity to stick it to somebody." He also stated that he was familiar with trucking companies because his friend owned one. When questioned about his stance on damages, Mr. Voss testified that he "would have to hear both sides and then try to make some kind of educated, you know, opinion on it."

Finally, Defendants take issue with Patricia Siverand. She indicated that her house was just destroyed for a second time.[2] She explained that she was at a breaking

---

[2] *Voir dire* occurred on Monday, May 24, 2021. A major flood event occurred in Lake Charles, Louisiana on Monday, May 17, 2021.

point from trying to find clothes to fighting with the insurance companies. However, she stated that she would try to give one hundred percent if she sat on the jury, but it would be problematic. Later, Defense counsel told the jury that Defendant had admitted fault, but "you're going to hear some evidence about the condition of the truck as well as the licensing." When asked whether "the fact that there may have been problems with the truck and they may have had problems with driver" would sway her opinion adversely for Defendants, Ms. Siverand responded:

> Yeah, because the fact then there's a problem with the truck and the driver and the company have them on the road endangering me and everybody else, no, I can't put that to the side.

When asked about her stance on damages, Ms. Siverand agreed with Mr. Voss's testimony he "would have to hear both sides and then try to make some kind of educated, you know, opinion on it." Ms. Siverand stated that she "would have to go with the way he said." Defense Counsel requested the trial court strike Ms. Siverand for cause based on her comments about fighting with the insurance company. The trial court stated, "I think homeowner's insurance is one thing. Everybody else is in an entirely different category around here." This was clearly a reference to Hurricane Laura, the ice storm, and the recent flood that all occurred within nine months of the start of this trial and devastated Lake Charles and the surrounding area.

Towards the end of *voir dire*, Defense counsel addressed all of the prospective jurors and asked:

> Can you follow the law as the Judge instructs you? Thank you.

> Liability, as I said, has been judicially confessed. The only thing you're going to decide is how much the money is going to be. And the Judge will instruct you on the burden of proof, which is more probably than not - - you heard a lot about that this morning - - for each element of the damages.

Will you commit to us that you will follow the Judge's instructions and award only those damages that are reasonable for the injuries proved by the plaintiff? Everybody is nodding yes. Thank you.

. . . .

How many of you feel like it's your duty to punish my client because they've admitted it's their fault in this accident?

Does anybody feel that way? [W]ill all of you follow the Judge's instruction on what damages can be awarded?

. . . .

After hearing all of this, do any of you feel like you're not the right person to referee this case? Does anybody feel like I just - - after what I've heard, I don't think I can be fair, other than the ones that have the comments earlier?

The transcript reflects that none of the prospective jurors indicated that he or she could not follow the law as instructed. Ultimately, these four prospective jurors were removed from the jury through Defendants' peremptory strikes.

"The trial court is afforded broad discretion in ruling on challenges for cause, because the trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the prospective jurors, which are not apparent at the appellate level when reviewing the record." *Palmer v. UV Insurance Risk Retention Group, Inc.*, 18-404, p. 7 (La.App. 5 Cir. 12/19/18), 262 So.3d 1006, 1012-13, *writ denied*, 19-107 (La. 4/29/19), 268 So.3d 284. After a review of the *voir dire* proceedings and all of the responses of these prospective jurors, we cannot say that the trial court abused its discretion in denying the challenges for cause. Each one of the prospective jurors at issue acknowledged that they could follow the law as provided by the trial court. We find that this assignment of error is without merit.

### VII. *Single Accident versus Separate Accidents for Insurance Purposes*

21

Prime argues that the trial court erred in denying its Motion for Summary Judgment on the "single versus multiple accident" issue for purposes of interpreting Prime's insurance policy. The Motion for Summary Judgment requested the trial court rule that this matter arises out of one accident rather than multiple, separate accidents, arguing Prime's total liability cannot exceed their policy limits for a single accident. In the ruling on the motion for summary judgment, the trial court declined to rule on this issue, finding that it was a question of fact not ripe for summary judgment.

At trial, the trial court refused to submit the issue to the jury because he did not want to "muddy the waters" by talking about other accidents and policy limits. Because the trial court did not rule on this issue, we find that it is not properly before this court on appeal. We remand this case to the trial court to determine whether this matter arises out of one accident or multiple accident for the purpose of interpreting Prime's insurance policy.

## DECREE

The trial court's judgment is affirmed. This matter is remanded to the trial court to determine whether this matter arises out of one accident or multiple accidents for the purpose of interpreting Prime's insurance policy. Costs of this appeal are assessed to Defendants Prime Insurance Company, Terry Graham Trucking, Inc. and Elvis Dean Thompson.

**AFFIRMED AND REMANDED.**